JAMES MESSINA, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 85—1615

Opinion filed June 30, 1986.

Anne M. Burke, of Larry S. Kajfes, Ltd., of Chicago, for appellant.

James D. Montgomery, Corporation Counsel, of Chicago (Mary K. Rochford and Jennifer A. Keller, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff, James Messina, appeals the dismissal of his suit to challenge his discharge as a probationary employee in the Chicago department of public works. We affirm as to count II, reverse as to count I, and remand this cause for further proceedings.

Plaintiff began working for the city of Chicago as a bricklayer for the department of public works more than 10 years ago, on July 27, 1973. In its 1984 annual appropriation ordinance, the Chicago city council reclassified plaintiff from a departmental employment service employee to a probationary career-services employee. Plaintiff was to serve a six-month probationary period from January 1, 1984, to June 30, 1984, which if successfully completed, would give him career-service status.

On February 27, 1984, defendant Myles McDarrah, superintendent of repairs of the department of sewers, suspended plaintiff for two days

(effective March 1, 1984) because he had knowingly allowed "a lewd and racial insult" directed against his supervisor to remain inscribed in fresh cement, where it could be seen by other department employees. Plaintiff worked for the remainder of his probationary period without further incident until he was discharged on June 29, 1984, one day before he would have attained career-service status. Defendant Eugene Barnes, acting commissioner of the department of sewers, did not give any reason for this action. One week later, on July 6, 1984, defendant Charles Pounian, commissioner of personnel, notified plaintiff by letter that he had been terminated for insubordinate actions and discourteous treatment of other city employees. Defendants do not dispute that plaintiff's suspension and his discharge were based on the same incident, and for the purposes of this appeal, all allegations in plaintiff's complaint, and exhibits attached thereto, are taken as correct. (*Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 836, 422 N.E.2d 86, 89.) See also *Azzone v. North Palos Fire Protection District* (1982), 105 Ill. App. 3d 877, 879, 435 N.E.2d 160, 161; *City of Chicago v. Severini* (1980), 91 Ill. App. 3d 38, 46, 414 N.E.2d 67, 72; Ill. Rev. Stat. 1985, ch. 110, pars. 8—1001, 8—1002 (appellate court can take judicial notice of rules and ordinances).

Plaintiff filed a complaint for declaratory judgment in the circuit court of Cook County on October 18, 1984. The circuit judge dismissed the original complaint but granted plaintiff leave to file an amended complaint, which plaintiff did on February 8, 1985. In count I, plaintiff charged that he had been discharged from his probationary position in violation of Rule IX, section 3, of the personnel rules of the city of Chicago, which provides:

"The department head may suspend a probationary employee. The employee does not have the right to request review of such action.

A department head may discharge an employee during the probationary period provided the department head notifies the Commissioner of Personnel in writing."

As to persons in plaintiff's position, section 6 of the city's 1984 appropriation ordinance stated:

"Employees holding positions in the Departmental Employment Service, except seasonal employees, immediately prior to the adoption of this ordinance shall continue in their respective positions without further examination, until separated from their positions as provided by Ordinance or Rule. Any such employee shall be required to serve a six month probationary period, commencing January 1, 1984, *provided, however, that any such employee discharged during this probationary period shall be pre-*

*sented by the Commissioner of Personnel with a written state-ment of the reason for such discharge.* Upon the successful com-pletion of this probationary period, such employee shall have ca-reer service status." (Emphasis added.)

It appears that other probationary employees were not entitled to writ-ten reasons for discharge under Chicago ordinances and rules. In count II, plaintiff contended that Rule IX, section 3, of the city's personnel rules was ineffective because it conflicted with section 10—1—14 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24,. par. 10—1—14). In both counts plaintiff prayed for reinstatement, back pay, accrued bene-fits and vacation time, and costs and attorney fees. The circuit judge dismissed plaintiff's complaint, on May 16, 1985, without leave to amend. Plaintiff now appeals.

■ Plaintiff first argues that his discharge was improper because it did not conform to the statutory procedure for discharging a proba-tionary employee, as set out in the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 10—1—4). However, Chicago, with a population in excess of 25,000 is a home rule unit under the Illinois Constitution (Ill. Const. 1970, art. VII, sec. 6). An ordinance enacted by a home rule unit under a grant of power from section 6(a) of article VII prevails over a conflicting State statute enacted prior to July 1, 1971, the effec-tive date of the constitution. (*Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 527, 343 N.E.2d 919, 922, *cert. denied* (1976), 429 U.S. 832, 50 L. Ed. 2d 97, 97 S. Ct. 95.) The relevant portions of the statute in question were reenacted in 1961, when the State's Municipal Code was adopted (1961 Ill. Laws 3252, sec. 1), long before the Constitution went into effect. The city personnel rules and ordinances applied in this case were adopted afterward and would therefore ordinarily supercede the State statute. (See *Resman v. Personnel Board* (1981), 96 Ill. App. 3d 919, 921-22, 422 N.E.2d 120, 122 (city of Chicago's personnel ordinance adopted under home rule authority supercedes section 10—1—18 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 10—1—18)). See also *City of Chicago v. State & Municipal Teamsters* (1984), 127 Ill. App. 3d 328, 340, 468 N.E.2d 1268, 1276; *Hoffman v. Board of Fire & Police Commissioners* (1980), 86 Ill. App. 3d 505, 507, 408 N.E.2d 98, 100.) Plaintiff, nonetheless, contends that the statute overrides the city's own personnel policies because the applicable rules and ordi-nances did not contain an express declaratory that they were enacted pursuant to home rule powers.

■■ Plaintiff is unable to cite any authority to suggest that a home rule city must declare that its actions are taken under home rule power for that power to take effect. On the contrary, should the Gen-eral Assembly wish to exercise exclusive power over a particular home

rule matter, it must expressly indicate its intent to do so in the statute. (*Hoffman v. Board of Fire & Police Commissioners* (1980), 86 Ill. App. 3d 505, 507, 408 N.E.2d 98, 100; Ill. Const. 1970, art. VII, sec. 6(i).) "The apparent philosophy in Chicago city government is that everything is home rule. *** The city does not flag its non-statutorily authorized acts with home rule labels." (Froehlich, I.I.C.L.E., *Municipal Law* sec. 22.74, at 22—109 (1978).) Consequently, requiring an express declaration of the home rule power in ordinances would have drastic consequences for the city of Chicago. It is the general rule in Illinois that an ordinance need not contain a recital of the authority under which it is enacted. (*Delamater v. Chicago* (1895), 158 Ill. 575, 583-84, 42 N.E. 444, 447 (recitation of repealed statute as authority was mere surplusage); *Father Basil's Lodge, Inc. v. City of Chicago* (1946), 393 Ill. 246, 252, 65 N.E.2d 805, 811 (the authority for an ordinance need not be derived from a single grant of power, but may be derived from several grants of power); 5 S. Flanagan, McQuillin's Law of Municipal Corporations sec. 16.14 (3d ed. 1981). See also Ill. Rev. Stat. 1985, ch. 24, pars. 1—2—1, 1—2—2.) Plaintiff advances no convincing policy arguments as to why city ordinances enacted pursuant to home rule authority should be treated any differently. Indeed, since home rule power is generally assumed for municipalities over 25,000 (Ill. Const. 1970, art. VII, sec. 6(a)), there is little to recommend the adoption of such a rule.

■ Moreover, our supreme court implicitly rejected plaintiff's argument in *Sommer v. Village of Glenview* (1980), 79 Ill. 2d 383, 403 N.E.2d 258, in which it held that a 1939 statute providing for a referendum on tax-rate limitations was an unconstitutional limitation on home rule units. The court reiterated that, "We have repeatedly held that 'a home rule unit's exercise of its power will supercede any conflicting pre-1970-Constitution legislation.' [Citations.] We have not, however, precisely defined what constitutes an 'exercise' of home rule power." (79 Ill. 2d 383, 392, 403 N.E.2d 258, 263.) It is clear from the general discussion in the opinion that the village trustees, when voting to omit the tax proposition from the ballot, did not expressly declare that they were acting pursuant to home rule. (79 Ill. 2d 383, 392, 403 N.E.2d 258 263.) Nonetheless, the court held that the village trustees' vote constituted an exercise of home rule power that superceded the State statute.

We conclude that a home rule city "exercises its home rule power" whenever it enacts an ordinance that conflicts with a pre-1970 statute even in the absence of an express reference to home rule in the ordinance. The city of Chicago passed a personnel ordinance in 1982, under its home rule authority, that explicitly provides:

"The Commissioner of Personnel shall issue personnel rules. ***

The rules shall provide:

* * *

(7) For probationary periods after original career service appointment not to exceed one year.

* * *

(12) For the establishment of disciplinary measures such as suspension, demotion in rank or grade, or discharge. Such measures shall provide for presentation of charges, hearing rights, and appeals for all permanent employees in the career service, consistent with the requirements of due process in law." (Municipal Code of Chicago, ch. 25, par. 25.1—5 (1986).)

Consequently, it is clear that the city of Chicago enacted a personnel scheme pursuant to its home rule powers and that the city is not bound by any conflicting standards in section 10—1—14 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 10—1—14). The circuit court was correct in dismissing count II of plaintiff's complaint.

In count I of his complaint plaintiff alleged:

"15. The procedure set forth in Rule IX, Section 3, permits department heads to discipline a probationary employee for an offense by either suspension [or] discharge.

16. Rule IX, Section 3, does not include any statement or provision which would confer upon Defendants, the authority both to suspend and discharge Petitioner for the same conduct ***.

17. In the absence of express language, Rule IX, Section 3, should be interpreted so as not to confer upon department heads the authority both to suspend and discharge probationary employees for same conduct.

18. Once Defendant, MYLES F. MCDARRAH, issued a Suspension Notice to Petitioner, suspending the Petitioner from his Probationary Career Service position for two calendar days for insubordinate actions and discourteous treatment, the Defendants CHARLES A. POUNIAN and EUGENE M. BARNES lacked any authority under Rule IX, Section 3, to discharge the Petitioner from his Probationary Career Service position on the basis of [the] same conduct for which Petitioner was suspended by Defendant MYLES F. MCDARRAH."

The circuit court dismissed this count for failure to state a cause of action. (Ill. Rev. Stat. 1985, ch. 110, par. 2—615.) This was error. A complaint should be dismissed for failure to state a cause of action only when it clearly appears that no set of facts that would entitle a plaintiff to relief could be proved under the pleadings. (*Krautstrunk v. Chicago Housing Authority* (1981), 95 Ill. App. 3d 529, 534, 420 N.E.2d 429, 433; *Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 1097, 407

N.E.2d 615, 618.)

To show that he would be entitled to relief under the allegations in count I of his complaint, quoted above, plaintiff cites *Burton v. Civil Service Com.* (1979), 76 Ill. 2d 522, 394 N.E.2d 1168. In that case, a civil service employee in the State Department of Revenue was suspended for 10 days and then later discharged for accepting a $20 "gratuity" from a taxpayer. The supreme court affirmed the decisions of both the circuit and appellate courts that the Department of Revenue's disciplinary action was improper. The court noted that State personnel rules provide separately for (1) suspensions totaling less than 30 days in a 12-month period, (2) suspensions totaling more than 30 days in a 12-month period, and (3) suspensions pending decision on discharge. The court concluded that the initial 10-day suspension constituted the final disciplinary action and that the Department had no statutory authority under sections 39b through 39b33 of the Civil Administration Code of Illinois and section 11 of the Personnel Code (Ill. Rev. Stat. 1975, ch. 127, pars. 39b through 39b33, 63b111), to reconsider or modify its final disciplinary action, once taken. (*Burton v. Civil Service Com.* (1979), 76 Ill. 2d 522, 526-27, 394 N.E.2d 1168, 1170.)

Rule IX, section 3 of Chicago's personnel rules, quoted previously, similarly allows the department head to either suspend or to discharge a probationary employee, but nowhere do the personnel rules contained in the record in this case or any personnel ordinance authorize the department head, or anyone else, to both suspend and later discharge a probationary employee as discipline for the same offense. As a result, we are bound by the teaching of the *Burton* case, which has been applied to municipal employees as well as State employees. In *Le Desma v. Village of Burr Ridge Fire & Police Com.* (1978), 60 Ill. App. 3d 768, 377 N.E.2d 319, for example, the chief of police reduced the plaintiff's rank in the police force and suspended him for five days as a result of an incident in which the plaintiff, while intoxicated, improperly displayed his revolver at a motel lounge. The village trustees subsequently held a hearing on the charges against plaintiff but had not yet announced a decision. Citing *Burton* the appellate court stated:

"We believe a similar principle is applicable to the instant case. The chief of police was authorized by the ordinance and rules to suspend plaintiff pending his investigation and he did do so until the investigation was completed and his penalty decision had been made. The chief then imposed a penalty authorized by the ordinances, rules and regulations of the department by suspending plaintiff for a specified five-day period of time without pay. We find that neither the Trustees nor the Commission has further authority to consider these charges de novo against plaintiff

and to impose other more substantial penalties for the same conduct considered by the chief of police." (60 Ill. App. 3d 768, 774, 377 N.E.2d 319, 324.)

See also *Green v. Board of Fire & Police Commissioners* (1980), 87 Ill. App. 3d 183, 191, 408 N.E.2d 1187, 1193. But see *Price v. Board of Fire & Police Commissioners* (1985), 139 Ill. App. 3d 333, 487 N.E.2d 677.

Defendants argue that *Burton* and *Le Desma* do not apply to this case because the employees in those cases had attained civil- or career-service status, while plaintiff was a probationary employee. We do not find this distinction to be controlling. While defendants could properly fire plaintiff in this case for any legal reason while he was a probationary employee, they were nonetheless prohibited from doing so in an improper manner. (See *People ex rel. Charles v. Telford* (1977), 48 Ill. App. 3d 928, 931-32, 363 N.E.2d 613, 615; *People ex rel. Miselis v. Heath & Hospitals Governing Com.* (1976), 44 Ill. App. 3d 958, 961, 358 N.E.2d 1221, 1223; *Sye v. Wood Dale Fire Protection District No. 1* (1976), 43 Ill. App. 3d 48, 50-51, 356 N.E.2d 938, 940-41.) The mere fact that plaintiff was a probationary employee did not give defendants license to act outside of their own rules. See *Alberty v. Daniel* (1974), 25 Ill. App. 3d 291, 296, 323 N.E.2d 110, 114 ("[T]he courts of this State have recognized the rights of probationary employees not to be discharged except according to law").

Defendants contend that to prohibit them from both suspending and later discharging a probationary employee for the same misconduct would deny them the discretion to use the entire probationary period to determine the employee's suitability. Defendants assert that such a prohibition "has the anomalous result of effectively and immediately conferring full career service status upon employees who engage in misconduct warranting some form of supervisory intervention." We do nothing of the kind. Our ruling does not mean that probationary employees can be dismissed only for cause. Probationary employees can still be dismissed for any legal reason, so long as that reason has not been the basis of a previous disciplinary sanction.

Employees are entitled to know when their liability for misconduct has ended, so that they may go about their normal business and plan their affairs secure in the knowledge that they will retain their employment after paying the penalty exacted by their superiors. This permits them to direct their energies towards reconciliation with the employer. It is undisputed in this case that plaintiff served the remaining four months of his probationary period without incident, and there is nothing in the record to show that his more than 10 years of prior service in his position was anything but satisfactory.

While there is no indication that plaintiff was covered by a collective bargaining agreement, it is a well-settled rule in labor-management relations that an employee cannot be punished twice for the same misconduct, even where a contract does not explicitly prohibit such discipline. For example, in *Abex Corp., Railroad Products Group v. United Steelworkers of America* (1977), 67 Lab. Arb. (BNA) 1313 (Smedley, Arb.), a machine-shop employee was reprimanded and then suspended for poor-quality work that he had produced a few months earlier. The arbitrator stated:

> "[T]he September 3, 1976 suspension was a second, separate and additional penalty for something that had already been disciplined. This constitutes double jeopardy, contrary to the established arbitral rule that only one discipline may be invoked for any one offense, and once invoked cannot be increased. [Citation.] The so-called double jeopardy rule preventing imposition by management of more than one penalty for a single offense is not seriously questioned in any arbitral authority. It is a salutory and necessary rule going to the very heart of due process and fundamental fairness. If a second penalty may be invoked for one offense, why not a third and where and when will it stop? The worker is entitled to know his case is determined and settled and that further discipline will be applied only if he errs anew." (67 Lab. Arb. (BNA) 1313, 1314.)

(See also *Auburn Faith Community Hospital, Inc. v. California Nurses' Association* (1976), 66 Lab. Arb. (BNA) 882, 893 (Killion, Arb.) (stating, "It is now an established tenet of industrial jurisprudence that once a penalty has been assessed and accepted it cannot be increased. This principle is based on concepts of double jeopardy borrowed from the criminal law and on those of due process and fair-play. Once management has assessed a penalty it does not get a second go at the employee for the same infraction when, upon review, higher management deems the first penalty inadequate"); *In re Wolverine World Wide, Inc. v. Amalgamated Meat Cutters Local 600* (1976), 66 Lab. Arb. (BNA) 796, 799 (Herman, Arb.); *Stauffer Chemical Co. v. International Union of Operating Engineers, Local 912* (1972), 59 Lab. Arb. (BNA) 414, 416 (Davis, Arb.) (stating, "This principle [against double jeopardy] is so well known and so well established as not to require specific explanation"); *Ashland Oil & Refining Co. v. Oil, Chemical & Atomic Workers International Union, Local 11—420* (1957), 28 Lab. Arb. (BNA) 874, 878 (Bardley, Arb.) ("Disciplinary action to be effective should be prompt and positive"); *Michigan Seamless Tube Co. v. United Steelworkers of America, Local 1900* (1955), 24 Lab. Arb. (BNA) 132, 134 (Ryder, Arb.); *Durham Hosiery Mills v. American Federation of Ho-*

*siery Workers, Brach 31—A* (1955), 24 Lab. Arb. 356, 358 (Livengood, Arb.); *John Deere Tractor Co. v. United Automobile, Aircraft & Agricultural Implement Workers of America, Local 838* (1949), 12 Lab. Arb. 129, 131 (Updegraff, Arb.) ("Much has been written concerning [double jeopardy as] a concession to the widespread basic feeling that after one punishment has been imposed or even after there has been one opportunity for punishment, further punishment or efforts to impose penalties are oppressive, unfair, and unjust").) We refer to these arbitration cases, not as direct authority for this case, but to demonstrate that double punishment, of the type that plaintiff received, is as widely disdained in the private sector as *Burton v. Civil Service Com.* (1979), 76 Ill. 2d 522, 394 N.E.2d 1168, holds that it is in the public sector.

The purpose of the city's career service is to promote job security which will ensure the development of a cadre of experienced employees and promote professionalism in city departments. However, adoption of these laudable goals does not give the city license to act arbitrarily, capriciously or unreasonably towards all employees who have not yet reached career-service status.

Defendant's might argue that they would have been better off had they simply terminated plaintiff without giving him any reason at all for their action. However, it was the Chicago city council, in the 1984 annual appropriation ordinance, and not this court, that chose to single out for special treatment those probationary employees who had held positions in the departmental employment service immediately prior to adoption of the ordinance, and to require the commissioner of personnel to provide them with written reasons for discharge. It would be both fitting and proper for us to infer that, in so doing, the council sought to prevent precisely what happened in this case. By requiring a statement of reasons, the city council could permit termination of such probationary employees on a showing of less than "just cause," and yet ensure that there were no discharges for improper reasons. Indeed, section 6 of the appropriation ordinance states, "In no event shall the authority conferred herein be exercised in violation of the Shakman judgment," a reference to the consent decree prohibiting discharge for purely political reasons of city employees in non-policy-making positions. (See, *e.g., Smith v. City of Chicago* (7th Cir. 1985), 769 F.2d 408; *Shakman v. Democratic Organization of Cook County* (7th Cir. 1976), 533 F.2d 344, cert. denied (1976), 429 U.S. 858, 50 L. Ed. 2d 135, 97 S. Ct. 156.)

■ Defendants argue that a rule forbidding suspension and subsequent discharge of probationary employees for the same misconduct encourages hasty and perhaps unwarranted dismissal decisions because an employer prevented from later dismissing an unsuitable probationary employee will likely err on the side of premature dismissal, and

thereby work an injustice on both the employer and employee. This is an attractive argument, but upon reflection it loses all appeal, for there is no reason to believe that employers will fail to impose sanctions appropriate to the employee's wrongdoing in the first instance. Employees enter the employment relationship with notice of the possible penalties for misbehavior. Department heads cannot be assumed to have the authority to modify punishments or augment punishments repeatedly on an *ad hoc* basis. (See *People ex rel. Lasser v. Ramsey* (1959), 23 Ill. App. 2d 100, 102-04, 161 N.E.2d 690, 692-93 (department head could not make repeated suspensions for the same offense, even if no single suspension exceeded 30 days).) They can act only upon the authority granted under the rules. Rules IX, section 3, authorizes suspension and discharge as separate sanctions, nothing in the rule allows both sanctions in combination as a disciplinary measure. If defendants are unhappy with this result, they can always change their rules.

The inapplicability of defendants' argument is particularly apparent in this case. Plaintiff had worked for the city for 10 years immediately prior to being placed on probationary status, and as far as we know had an unblemished record, so it is questionable whether defendants needed more time to judge his performance. Given that there is nothing in the record to show that the city's personnel rules put plaintiff on notice that he might be suspended and later discharged for the same misconduct, the unfairness of suspending him and then lulling him into a sense of job security after his suspension had ended is readily apparent.

We emphasize that in this case we are considering a suspension that was imposed as a sanction, rather than a suspension imposed pending investigation or decision on discharge. (*Cf. Green v. Board of Fire & Police Commissioners* (1980), 87 Ill. App. 3d 183, 189-91, 408 N.E.2d 1187, 1192-93.) Plaintiff returned to work for several months after he was suspended—consequently, we have no occasion to comment upon the propriety of such suspensions under the personnel ordinance and the city's rules. A suspension pending decision on discharge is not a disciplinary sanction *per se*. Rather, it is designed to remove an employee who could be harmful to the day-to-day operations of the city, pending investigation of the case.

We conclude that the circuit court erred in dismissing count I of plaintiff's complaint, and that under the facts as alleged he would be entitled to reinstatement. (See *Burton v. Civil Service Com.* (1978), 57 Ill. App. 3d 835, 840, 373N.E.2d 765, 769, *aff'd* (1979), 76 Ill. 2d 522, 394 N.E.2d 1168.) However, because this case comes to us only at the pleading stage, defendants must be given the opportunity to demonstrate whether any other ordinance or rule authorized suspension and subsequent discharge of a probationary employee for a single act of

misconduct. Consequently, we must remand this cause for further proceedings consistent with this opinion. (See *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 182, 380 N.E.2d 790, 792; *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 415, 312 N.E.2d 605, 614.)

During oral argument in this court, plaintiff contended that he had asserted a Federal due process claim, but that the circuit judge refused to hear it. There is nothing in the record to support this contention. Clearly, Federal due process claims are cognizable in Illinois courts under 42 U.S.C. sec. 1983. (*International Society of Krishna Consciousness, Inc. v. City of Evanston* (1980), 89 Ill. App. 3d 701, 707-10, 411 N.E.2d 1030, 1036-37, *cert. denied* (1981), 454 U.S. 878, 70 L. Ed. 2d 188, 102 S. Ct. 358; *Keller v. Board of Education* (1978), 68 Ill. App. 3d 7, 10-11, 385 N.E.2d 785, 788; *Alberty v. Daniel* (1974), 25 Ill. App. 3d 291, 294-95, 323 N.E.2d 110, 113-14.) For procedural due process to apply, plaintiff must establish that he had an entitlement to his job. (See *Perry v. Sindermann* (1972), 408 U.S. 593, 599-603, 33 L. Ed. 2d 570, 578-81, 92 S. Ct. 2694, 2698-2700; *Board of Regents v. Roth* (1972), 408 U.S. 564, 576-79, 33 L. Ed. 2d 548, 560-62, 92 S. Ct. 2701, 2708-10.) Indeed, if plaintiff had a property interest in his job, the city could not properly dismiss him without providing him with a hearing prior to termination. (*Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 546, 84 L. Ed. 2d 494, 506, 105 S. Ct. 1487, 1495.) In his initial complaint, however, with respect to due process, plaintiff alleged only:

> "14. The Defendants *** have ignored the City of Chicago Appropriation Ordinance, and have abused their discretion and conspired to act arbitrarily and capriciously and without justification toward the [plaintiff], denying him his Career Service status position, and violating his rights to equal protection of the law and due process under the Constitutions of the United States of America and the State of Illinois."

Far from prohibiting plaintiff from asserting a due process claim, the circuit court indicated in its dismissal of the first complaint:

> "That as to those rights set forth in conclusory fashion in Count I, as having been violated, those counts are stricken with leave granted to plaintiff to file an amended complaint within 28 days."

Plaintiff was put on notice of the deficiencies in his complaint in defendants' memorandum in support of the motion to dismiss. Defendants stated that plaintiff's "due process claim is fatally deficient because he fails to identify any property interest which was violated by his termination." A plaintiff must plead facts sufficient to state a cause of

action. (*Fort v. Smith* (1980), 85 Ill. App. 3d 479, 480-82, 407 N.E.2d 117, 118-20; Ill. Rev. Stat. 1985, ch. 110, par. 2—603.) Rather than indicating a basis for the due process claim, plaintiff simply filed a new complaint in which he omitted all reference to due process or other rights under the Federal constitution. Plaintiff's first amended complaint was complete in itself, making no reference to the original complaint. Such an amended pleading supercedes the prior pleading and the claims asserted in the prior pleading are considered abandoned or withdrawn. (*Robins v. Lasky* (1984), 123 Ill. App. 3d 194, 198, 462 N.E.2d 774, 777.) Thus, although the question whether individuals, like plaintiff, who had been employed by the city for many years before they were put on probation under the "Career Service" scheme, had a property interest in their jobs is apparently being litigated in other courts (see *Gutierrez v. City of Chicago* (N.D. Ill. 1985), 605 F. Supp. 973, 977), it has not been raised here.

■ Finally, plaintiff argues that he was entitled to attorney fees. Defendants correctly point out that Illinois has no common law principle allowing attorney fees. (*Caruso v. Board of Trustees* (1984), 129 Ill. App. 3d 1083, 1087, 473 N.E.2d 417, 420.) To recover fees a litigant must point to a statute or agreement between parties providing for such fees. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 166, 390 N.E.2d 859, 865; *Gonzales-Blanco v. Clayton* (1983), 120 Ill. App. 3d 848, 850, 458 N.E.2d 1156, 1158.) Most importantly, in order to get attorney fees, based on any statute, plaintiff must first prevail. (*Kolkovich v. Tosolin* (1974), 19 Ill. App. 3d 524, 530, 311 N.E.2d 782, 788; *O'Hare v. Moniak* (1969), 110 Ill. App. 2d 327, 328, 249 N.E.2d 178, 178-79.) Plaintiff has not yet done so, he has only succeeded in obtaining the right to proceed with this action in the circuit court. (*Cf. Hanrahan v. Hampton* (1980), 446 U.S. 754, 758-59, 64 L. Ed. 2d 670, 675, 100 S. Ct. 1987, 1990.) Thus, plaintiff's claim for attorney fees, even if statutorily authorized, must fail at this time.

The decision of the circuit court dismissing the complaint as to count II is affirmed. The decision dismissing count I of plaintiff's complaint is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed and remanded in part.

STAMOS and HARTMAN, JJ., concur.