ADA PHILLIPS, Plaintiff-Appellant, v. THE CIVIL SERVICE COMMIS-
SION *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—87—0174

Opinion filed June 30, 1988.—Rehearing denied August 8, 1988.

JOHNSON, J., dissenting.

Alan Rhine, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Eddie Santiago, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Cook

County which upheld the Illinois Civil Service Commission's decision to approve the discharge of the plaintiff, Ada Phillips, from her position with the Illinois Department of Registration and Education.

On appeal the plaintiff argues that: (1) she was denied her due process right to a pretermination hearing; (2) the post-termination hearing was unreasonably delayed in violation of her constitutional rights and in violation of "state law"; (3) her discharge violated the principle of progressive corrective discipline; (4) her discharge constituted a double sanction; (5) the transfer which led to the facts underlying one of the reasons for her discharge violated section 16.02(f) of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4435(f)); and (6) her discharge was unwarranted.

The plaintiff began her employment with the Illinois Department of Registration and Education on September 14, 1976. During the major portion of her employment with the Department, the plaintiff worked as a medical investigator in the Medical Investigations Unit. On April 29, 1983, the plaintiff received written notice of intent to suspend for five days and the plaintiff was subsequently suspended for five days, between May 9, 1983, and May 14, 1983. The written notice of suspension stated that the basis of the suspension was continued insubordination and refusal to follow instructions. As examples of her refusal to cooperate, the notice stated that the plaintiff had failed to accept instructions, had failed to complete assignments, and had failed to follow sign-in procedures. The notice of suspension stated that the plaintiff had been issued an oral reprimand on February 25, 1983, a written reprimand on March 2, 1983, and a one-day suspension on March 16, 1983, all for failing to comply with agency policy and procedures. Further, the notice informed the plaintiff that she had two working days after being informed of the proposed suspension within which to address the head of the agency regarding the reason given for the suspension. The plaintiff did in fact respond in writing to the notice of suspension.

On May 14, 1983, the last day of the plaintiff's suspension, she was placed on suspension pending discharge for continued insubordination. The suspension was extended for 23 days.

Subsequently, on June 6, 1983, the plaintiff was discharged for: (1) failure to report for an assignment; (2) failure to comply with work procedures; and (3) falsifying investigative activities/reports. The plaintiff was informed of the underlying facts which according to the Department formed the basis for her discharge. The specific details regarding the basis for her discharge will be provided later.

After her discharge, the plaintiff was granted a post-termination

hearing before the Illinois Civil Service Commission. The evidence in the record shows that while working as a medical investigator, the plaintiff received a death threat in connection with a case she had investigated. In response to the seriousness of the matter, the plaintiff's superiors decided to temporarily reassign her to the Health Related Investigations Unit effective April 18, 1983, in order to alter her daily routine and allow her to travel on a statewide basis. The Health Related Investigations Unit investigated allegations against licensed health professionals other than medical doctors. Two of the three reasons for the plaintiff's discharge relate to this temporary assignment.

After being transferred, the plaintiff met with her new supervisor, Gregory Dickinson, to discuss cases which were assigned to her. Details regarding the plaintiff's conduct during this assignment will be provided later.

Shortly after the transfer, the plaintiff met with her former supervisor from the Medical Investigative Section, who asked her to supply some reports or notes regarding medical investigation cases that the plaintiff had worked on since 1980. Certain quarterly summaries of those cases did not have corresponding investigative reports as required by office procedure to substantiate the investigation. Although the plaintiff stated that she had made reports and had notes regarding the investigative activity, she failed to produce copies of the investigative reports or related investigative notes. A search of the plaintiff's files after her discharge failed to produce either the reports or the notes.

At the conclusion of the evidentiary hearing and upon filing of closing arguments, the hearing officer entered its recommended decision. The recommended finding of the hearing officer was that charges 1 and 2 were not proved and that charge 3 was proved and that the plaintiff should only be suspended for three days. Thereafter, the Commission entered its decision in the case finding that charges 2 and 3 were proved and that the proof of these two charges warranted the discharge of the plaintiff.

■■ The plaintiff initially contends that she was denied her due process right to a pretermination hearing. In *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487, the Supreme Court held that due process requires some kind of hearing prior to the discharge of an employee. Although the hearing need not be elaborate, *Loudermill* requires some minimal informal pretermination opportunity whereby a public employee is given oral or written notice of the charges against her, an explana-

tion of her employer's evidence, and an opportunity to defend herself against the charges. *Loudermill*, 470 U.S. at 546, 84 L. Ed. 2d at 506, 105 S. Ct. at 1495.

In the case at bar, the plaintiff was suspended twice. The first time she was suspended for five days and at that time she was given written notice that her suspension was for continued insubordination and refusal to follow instructions. The written notice of suspension listed specific incidents and noted that the plaintiff had previously been issued oral and written reprimands for failing to comply with agency policy and procedure. Further, the notice informed the plaintiff that she had two working days after being informed of the proposed suspension within which to respond to the reasons for the suspension. The plaintiff did in fact respond in writing. On the last day of the plaintiff's suspension, she was placed on suspension pending discharge for continued insubordination and was subsequently discharged. The basis of the suspension pending discharge was, in part, the same as the original suspension. Although the notice of suspension pending discharge did not state that the plaintiff could respond, the plaintiff had already been notified that she could respond to the original suspension, and had in fact taken advantage of that opportunity and detailed her response to the original suspension. Further, the plaintiff had been approached several times by Dickinson, her supervisor in the Health Related Investigations Unit, about the problems of not showing up for work and not signing in. The plaintiff was also approached by her supervisor in the Medical Investigations Unit regarding the missing investigative reports, and the plaintiff was given an opportunity to account for their whereabouts.

In *Loudermill*, the Supreme Court's concern with employees' rights stemmed from the complete denial of *any* pretermination opportunity to be heard. (*Board of Trustees of Community College District 508 v. McKinley* (1987), 160 Ill. App. 3d 916, 923, 513 N.E.2d 951, 955.) In requiring at least an informal pretermination opportunity to be heard, the Court envisioned that the opportunity need only be extensive enough to guard against mistaken decision. (*Brasslett v. Cota* (1st Cir. 1985), 761 F.2d 827, 836.) The more complete the process at the later stages, the less formal the pretermination opportunity needs to be. *Kelly v. Smith* (11th Cir. 1985), 764 F.2d 1412, 1415.

Accordingly, the plaintiff was not denied her due process right to a pretermination hearing. The plaintiff was confronted by her supervisor, the plaintiff had an opportunity to present her position and explain herself prior to her suspension and discharge, and the plaintiff

was given an extensive post-termination hearing.

The plaintiff next contends that the defendant, Illinois Department of Registration and Education (Department), unreasonably delayed the hearing by failing to file written memoranda when due. Specifically, the plaintiff points to two incidents. The first incident was the Department's failure to respond to the plaintiff's motion to dismiss the administrative hearing for a period of five months. The plaintiff complains that the Department failed to file its response when due, and that even after extensions had been granted, failed to meet the deadline set by the hearing officer. The plaintiff points out that the hearing officer made a recommended decision before the Department filed its response. The plaintiff further complains that even after the Department filed its response the Commission requested additional briefing on a specific issue and accordingly granted both parties additional time to address the issue. The second incident upon which the plaintiff bases her unreasonable delay argument was the filing of closing arguments 16 days after the day set by the hearing officer and without requesting an extension of time.

■ The plaintiff argues that these delays violated her due process rights. The plaintiff makes reference to a remark made by the Supreme Court in *Loudermill*, that at some point, a delay in the post-termination hearing becomes a constitutional violation. (470 U.S. 532, 547, 84 L. Ed. 2d at 507, 105 S. Ct. at 1496.) However, in *Loudermill*, the Supreme Court found that there were no facts to state a claim of a constitutional deprivation. The plaintiff fails to cite any authority to support her argument that the delay in filing written memoranda was so unreasonable that she was denied due process.

Plaintiff's argument that this delay violated "state law" is also without merit. An administrative agency possesses broad discretion in determining whether to allow a delay or a continuance in the proceeding before it. (*Mohawk Medical Center, Inc. v. Quern* (1980), 84 Ill. App. 3d 1026, 1029, 406 N.E.2d 839, 842.) While the situation is not ideal, we do not find that the Commission abused its discretion regarding the aforementioned delays.

■ The plaintiff next contends that the Commission failed to follow its own rules, which mandate progressive corrective discipline. The Administrative Code, applicable to the Civil Service Commission and in force at the time discharge proceedings were initiated against the plaintiff, includes Rule 302.626, which provides in pertinent part:

"Unless grounds clearly are present warranting immediate discharge or suspension pending decision on discharge, employees

shall be subject to corrective discipline progressively utilizing counseling, warnings, and/or suspension, as the facts and circumstances dictate, prior to discharge. If an employee's work or work-related conduct remains unacceptable after the application of progressive corrective discipline, such employee may be discharged in accordance with the appropriate rules below." 80 Ill. Adm. Code 302.626 (1985).

The plaintiff cites *Bell v. Civil Service Comm'n* (1987), 161 Ill. App. 3d 644, 515 N.E.2d 248, as support for her argument that her situation warranted the application of progressive corrective discipline. However, *Bell* can easily be distinguished from the instant case. The employee in *Bell* was never criticized, warned, disciplined or given notice of any acts which led to the decision of discharge. The plaintiff in the instant case was issued an oral reprimand on February 25, 1983, and a written reprimand on March 2, 1983. She was suspended for one day on March 16, 1983. Prior to being suspended for five days, she was confronted on several occasions by her superiors concerning the problems which formed the basis for both her suspension and her discharge.

Accordingly, keeping in mind the broad discretion given to the Commission in applying its rules (*Mohawk Medical Center, Inc. v. Quern* (1980), 84 Ill. App. 3d 1026, 1029, 406 N.E.2d 839, 842), we do not find that it violated the rule regarding progressive corrective discipline.

■ The plaintiff's next contention is that the discharge of the plaintiff constituted an improper double sanction. According to the plaintiff, the Department impermissibly discharged her based upon the same conduct which was used to suspend her. In support of her argument, the plaintiff cites *Burton v. Civil Service Comm'n* (1979), 76 Ill. 2d 522, 394 N.E.2d 1168, and *Messina v. City of Chicago* (1986), 145 Ill. App. 3d 549, 495 N.E.2d 1228.

In *Burton,* a security fraud investigator employed by the Illinois Department of Revenue was suspended for 10 days for "accepting a gratuity from a taxpayer." Before the 10 days expired, the investigator was served notice of suspension pending discharge for accepting a gratuity, attempting to cause another employee to accept it, and giving false information to cover up wrongdoing. The supreme court held that the initial 10-day suspension had been imposed for the plaintiff's entire course of conduct, all of which had been known to the department head when that penalty had been initially decided upon. In reaching such a conclusion, the supreme court noted that to allow the Department of Revenue to divide an employee's unethical

conduct into its component parts after it punished the employee would be to endow the Department of Revenue with the power to reconsider its final disciplinary action.

In *Messina*, an employee with the Department of Public Works was given a two-day suspension for allowing a lewd and racial comment about his superior to remain inscribed in a cement wall. Approximately four months after returning from his two-day suspension, the employee was discharged for "insubordinate actions and discourteous treatment of other city employees." The government did not dispute that the plaintiff's suspension and discharge were based on the same incident. Thus, the court found *Burton* controlling. The court noted that there was nothing in the record to show that the employee's 10-year service with the government had been anything but satisfactory.

In the instant case, unlike in *Burton* and *Messina*, the initial suspension and the suspension pending discharge were not based exclusively on the same single act. The plaintiff in the instant case was transferred to the Health Related Investigations Unit on April 18, 1983. The plaintiff was given notice of intent to suspend on April 29, 1983, for continued insubordination/refusal to follow instructions. The notice stated that the plaintiff had failed to accept instructions, had failed to complete assignments from April 18, 1983, through April 26, 1983, and had failed to follow sign-in procedures. The plaintiff served the five-day suspension on May 9, 1983, through May 14, 1983. The plaintiff was suspended pending discharge on May 14, 1983, for continued insubordination. Subsequently, on June 6, 1983, the plaintiff was discharged for (1) failing to report to work as directed; (2) failing to comply with work procedures; and (3) falsifying investigative activities/reports. Part of the basis for the plaintiff's discharge was continued insubordination/failure to comply with work procedures in that she failed to complete assignments to indicate any work performed from April 27, 1983, through May 6, 1983. Discharge was also based on the fact that the plaintiff falsified investigative activities/reports. This charge was not included as part of the basis for the initial five-day suspension. The basis for the charge of falsifying investigative activities/reports was not discovered until after the plaintiff had been served with notice of intent to suspend for five days.

Although we recognize that the initial suspension and the suspension pending discharge involve a course of conduct which has some common acts as well as different acts, we do not believe this indicates an attempt to divide a single act into component parts. We find

it significant that prior to the initial five-day suspension, the plaintiff had been issued oral and written reprimands as well as a one-day suspension for failing to comply with agency policy. There was no suggestion that the employees in either *Burton* or *Messina* had ever been disciplined for the single act which formed the basis for the suspension and the discharge.

■ The plaintiff next contends that the Department was without statutory authority to transfer her from the Medical Investigations Unit to the Health Related Investigations Unit. The plaintiff maintains that her reassignment violated section 16.02(f) of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4435(f)), which provides in part that "[a]ll employees of the [Medical Disciplinary] Board shall be directed by, and answerable to, the Board with respect to their duties and functions." The plaintiff claims that she was improperly transferred because the Department did not consult the Board. According to the plaintiff, any insubordination under charge 2 resulted from an illegal reassignment.

The plaintiff cites no authority and we are unaware of any authority which construes this provision as prohibiting supervisors from temporarily transferring employees to different investigative units within the Department.

■ The plaintiff finally objects to the Commission's conclusion that discharge was warranted based on charges 2 and 3. An administrative review of a discharge involves a consideration of whether the findings of fact are against the manifest weight of the evidence and whether the facts provide a sufficient basis for discharge. *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.

Charge 2 stated that the plaintiff failed to comply with work procedures. The testimony of Dickinson, supervisor of the Health Related Investigations Unit, indicates that the plaintiff did not produce any work from April 27, 1983, through May 6, 1983, did not follow departmental sign-in procedures, anu refused to cooperate or follow instructions. The plaintiff testified that it was unreasonable for Dickinson to expect any reports from her because she was under much stress due to the death threat, she was busy responding to her notice of suspension, and she was required to learn new laws as a result of her April 18, 1983, transfer. The plaintiff also testified that she did not follow sign-in procedures because she was told not to set a pattern of activity. However, the plaintiff admitted that she was never told that she was not required to work a regular work week or that she was excused from signing in. A review of the voluminous record

indicates that the plaintiff did not hide the fact that she was extremely unhappy about the temporary transfer, resented having to work for Dickinson, and found cooperating with him to be an impossible task.

Charge 3 stated that the plaintiff falsified investigative reports. Testimony was presented regarding the procedure for maintaining investigative files. Although the plaintiff's summaries indicated that certain work had been completed, no corresponding investigative reports or notes relating to 10 cases which the plaintiff claimed she made were ever found. Further, the plaintiff was never able to furnish the notes. Michael Fullman, Deputy Director of the Department, testified that in his experience with the Department, there had never been another case where no copy of a report could be located.

We conclude that the record discloses evidentiary support for the agency's determination that charges 2 and 3 were proved and, therefore, its finding was not against the manifest weight of the evidence.

█▌ ▌ We further hold that the findings by the Commission provide a sufficient basis for the agency's conclusion that cause for discharge exists. "Cause" has been judicially defined as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position. (*Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 551, 426 N.E.2d 885, 887.) Substantial deference must be given to the Commission's ruling on the question of cause, and a decision that cause exists to discharge will only be overturned if it is arbitrary and unreasonable or unrelated to the requirements of service. *Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105, 449 N.E.2d 115, 117.

On our review of the record, we cannot say that the Commission's decision was arbitrary, unreasonable or unrelated to the requirements of the service. In addition to the specifics of charges 2 and 3, it is apparent that the essence of the cause for dismissal was the plaintiff's repeated failure to abide by agency policy and refusal to cooperate. We defer to the Commission's judgment that this conduct is detrimental to the discipline and efficiency of the Department. In closing, we note that the court is not to assume the function of supercommission or superchief of police. (*Epstein v. Civil Service Comm'n* (1977), 47 Ill. App. 3d 81, 85, 361 N.E.2d 782, 785.) Satisfied that the plaintiff had a fair and proper hearing, and satisfied that the conclusions of the Commission are not against the mani-

fest weight of the evidence, we uphold the discharge of the plaintiff.

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

McMORROW, J., concurs.

JUSTICE JOHNSON, dissenting:

I respectfully dissent from the majority's opinion affirming the Commission's decision to discharge plaintiff.

Plaintiff contends that her discharge constituted an improper double sanction and cites *Burton v. Civil Service Comm'n* (1979), 76 Ill. 2d 522, and *Messina v. City of Chicago* (1986), 145 Ill. App. 3d 549, as authority. I find these cases to be directly on point.

In *Burton*, a civil service employee received a 10-day suspension for accepting a $20 "gratuity" from a taxpayer. Before returning to work, plaintiff was notified of his further suspension pending discharge for the same conduct; subsequently, he was discharged. The Illinois Supreme Court affirmed and stated the following:

"State personnel rules provide separately for suspensions totaling less than 30 days in a 12-month period, for suspensions totaling more than 30 days in a 12-month period, and for suspensions pending decision on discharge. * * * The three are distinct disciplinary actions which are not interchangeable." *Burton*, 76 Ill. 2d at 526.

In *Messina*, plaintiff, an employee of the City of Chicago, was suspended for knowingly permitting a lewd and racial insult about his supervisor to remain scrawled in fresh cement. For this same conduct, he was subsequently terminated. The *Messina* court, relying on the teachings of *Burton*, found that Rule IX, section 3 of the personnel rules of the City of Chicago authorized suspension and discharge as separate sanctions, but did not authorize both sanctions in combination as a disciplinary measure. (*Messina v. City of Chicago* (1986), 145 Ill. App. 3d 549, 555.) The court reasoned that "[e]mployees are entitled to know when their liability for misconduct has ended, so that they may go about their normal business and plan their affairs secure in the knowledge that they will retain their employment after paying the penalty exacted by their superiors. This permits them to direct their energies towards reconciliation with the employer." *Messina*, 145 Ill. App. 3d at 556.

I believe the principles articulated in *Burton* and *Messina* are ap-

plicable to the instant case. The majority opinion mistakenly asserts that these cases are factually dissimilar from the present case. They claim that the basis for the suspension and the suspension pending discharge involved a course of conduct which has some common acts as well as different acts. Such is not an accurate recitation of the facts.

The facts show that plaintiff was placed on a five-day suspension on May 9, 1983. On May 14, 1983, she was notified that her suspension was extended pending discharge for "continued insubordination." Thereafter she was discharged on June 6, 1983. According to the majority opinion, her initial suspension was based on misconduct from April 18 through April 26, 1983, and her subsequent discharge was allegedly for misconduct from April 27 through May 6.

Defendants have arbitrarily divided the time period of misconduct in order to justify plaintiff's discharge. In essence, defendants' reasons for suspension pending discharge and her dismissal are merely a more detailed reiteration of the reasons for the initial suspension. Plaintiff was never allowed to return to work after her initial suspension; therefore, she was never afforded the opportunity to correct her prior misconduct. Indeed, she could not have engaged in any new act or acts of misconduct between the time of her suspension and her suspension pending discharge to justify her dismissal. (*Messina v. City of Chicago* (1986), 145 Ill. App. 3d 549, 556.) I would reverse the Commission's decision.