2004 ND 9

**Galen NAGEL, Plaintiff and Appellant**

v.

**CITY OF BISMARCK, Defendant and Appellee.**

**No. 20030265.**

Supreme Court of North Dakota.

Jan. 14, 2004.

Rehearing Denied Feb. 25, 2004.

Michael Geiermann, Schulz Lervick Geiermann & Bergeson Law Offices, Bismarck, N.D., for plaintiff and appellant.

Charles L. Chapman, Chapman and Chapman, Bismarck, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] Galen Nagel appeals a judgment dismissing his petition for a writ of manda-

mus to require the City of Bismarck and the Bismarck Police Department to reinstate him as a police officer. We affirm.

## I

[¶ 2] The police department employed Nagel from December 16, 1994, to September 16, 2002. During his employment, the police department disciplined Nagel twice in 1999 and once in 2001.

[¶ 3] The discipline that is the subject of this appeal resulted from an investigation on four possible charges in the fall of 2001. The Internal Review Board of the police department found a basis for two charges of inappropriate conduct, and after review, the Chief of Police agreed with the Board's conclusion. In the first incident, Nagel was disrespectful to two non-police department women conducting in-service training. In the second incident, Nagel made disrespectful remarks accusing a lieutenant and the police department administrators overall, of being liars.

[¶ 4] On January 25, 2002, the Chief of Police suspended Nagel for 160 hours and ordered him to successfully complete a fitness-for-duty examination. Nagel appealed his discipline to the Civil Service Commission ("Commission"). Nagel requested that Dr. Michael Campion, a clinical psychologist, conduct the examination, and the Chief of Police agreed. Dr. Campion had experience conducting police officer evaluations for the police department in St. Paul, Minnesota. Dr. Campion conducted the fitness-for-duty examination on March 28, 2002, prior to the Commission hearing Nagel's appeal.

[¶ 5] On April 2, 2002, the Commission heard Nagel's suspension appeal. The Commission dismissed Nagel's appeal with prejudice and concluded the general orders in the police department policy manual stating, "[d]iscipline may be administered in a corrective or punitive manner" and "[t]he Chief of Police will make a determination as to whether or not suspension or a more severe form of discipline appears appropriate," do not prohibit the police department from imposing both corrective and punitive discipline.

[¶ 6] On July 31, 2002, Dr. Campion issued his report and concluded, "[i]t is the examiner's opinion based on the information available at the time of assessment and with a reasonable degree of psychological certainty, that Officer Nagel is unfit for duty with the Bismarck, North Dakota Police Department as a department officer." On August 27, 2002, Nagel's attorney sent Dr. Campion a letter asking if he had any "recommendations for treatment for Officer Nagel so that he may return to his employment in the Bismarck Police Department." The Chief of Police also requested this information. Dr. Campion responded on September 10, 2002, and stated, "Officer Nagel's prognosis is guarded, therefore, counseling is not recommended as a condition for continual employment on the Bismarck Police Department."

[¶ 7] The Chief of Police terminated Nagel on September 16, 2002. The Chief of Police cites Bismarck Municipal Ordinance 9–06–02(3) as authority to terminate Nagel, which states, "[a]n employee may be subject to disciplinary action for conduct impairing their performance or that of the city government, including, but not limited to: ... [i]nability to get along with fellow employees or the citizenry resulting in interference with the performance of duties of any employee."

[¶ 8] Nagel filed a timely appeal of his termination to the Commission. The Commission concluded Nagel's termination did not discipline him twice for the same conduct. The Commission also reiterated that the general orders in the police depart-

ment policy manual do not prohibit the police department from imposing both corrective and punitive discipline. In addition, the Commission concluded Bismarck Municipal Ordinance 9–06–05 did not apply to Nagel's termination for cause under 9–06–02. The Commission ordered Nagel's appeal dismissed and concluded Nagel's termination was justified based on prior discipline problems, current discipline, and the fitness-for-duty examination.

[¶ 9]  Nagel filed a petition for a writ of mandamus on February 20, 2003, which the trial court dismissed on August 14, 2003. It concluded that the Chief of Police had authority to impose both corrective and punitive discipline as part of the same order, that 9–06–05 did not apply to this termination, that the police department did not discipline Nagel twice for the same conduct, that Nagel's termination was part of the discipline originally imposed on January 25, 2002, that successful completion of the fitness-for-duty examination was a condition of Nagel's return to duty, and that Nagel does not have a clear legal right to a writ of mandamus. Nagel appeals the Judgment of Dismissal to this Court.

## II

[¶ 10]  Absent an abuse of discretion, this Court will not overturn a trial court's denial of a petition for a writ of mandamus. *Smith v. Burleigh County Bd. of Comm'rs*, 1998 ND 105, ¶ 9, 578 N.W.2d 533. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Opdahl v. Zeeland Pub. Sch. Dist. No. 4*, 512 N.W.2d 444, 446 (N.D.1994). In this case, the trial court did not abuse its discretion when it denied Nagel's petition for a writ of mandamus.

[¶ 11]  A party seeking a writ of mandamus bears the burden of demonstrating a clear legal right to the perform-

ance of the particular acts sought to be compelled by the writ. *Krabseth v. Moore*, 1997 ND 224, ¶ 6, 571 N.W.2d 146. In addition, a party seeking a writ of mandamus must have no other plain, speedy, and adequate remedy in the ordinary course of the law. *Smith*, 1998 ND 105, ¶ 9, 578 N.W.2d 533 (quoting *Tooley v. Alm*, 515 N.W.2d 137, 140 (N.D.1994)). Mandamus is unavailable if an appeal is authorized from an adverse decision. *Smith*, at ¶ 9.

[¶ 12]  An appeal is not authorized from the Commission's decision regarding Nagel's termination because the Commission's decision is final. Bismarck Municipal Ordinance 9–06–04(6). Nagel claims the Chief of Police failed to follow city ordinances governing termination of city employees. Nagel argues the police department violated procedures outlined in city ordinances and general orders. We conclude petitioning the trial court for a writ of mandamus is procedurally appropriate. *See Blomquist v. Clague*, 290 N.W.2d 235, 236–37 (N.D.1980); *Rudnick v. City of Jamestown*, 463 N.W.2d 632, 637 (N.D.1990).

## III

[¶ 13]  Nagel claims the city failed to follow Bismarck Municipal Ordinance 9–06–05 and police department general orders when it terminated him. Nagel claims the police department violated police department general orders by punishing him twice for the same conduct. In addition, he argues the city was required to follow Bismarck Municipal Ordinance 9–06–05 because Dr. Campion determined he was unfit to be a police officer for the police department.

### A

[¶ 14]  We have never addressed whether a city may suspend a city employ-

ee and then dismiss him for the same conduct. Under the facts of this case, it is unnecessary to decide that issue because Nagel's termination was a result of his failure to successfully complete a fitness-for-duty examination which was part of his original discipline. In her notice of suspension, the Chief of Police stated:

> In addition to [160 hours of suspension] as a result of both violations you will submit to a fitness for duty exam as follows:
>
> ....
>
> E. You are hereby ordered to sign medical releases authorizing the physician/medical professional to release a summary of his/her findings following the psychological evaluation *and* the fact of your participation in any recommended treatment and/or therapy *and* your successful or unsuccessful completion of the same. This is to ensure that I receive a summary of the psychological evaluation and am able to monitor your involvement in any treatment or therapy recommended by the selected physician/medical professional.
>
> F. You are hereby order[ed] to follow through with any and all programs recommended by the physician/medical professional.
>
> G. Failing to follow through with these orders will be grounds for additional disciplinary action up to and including termination.

In a letter to Nagel, dated May 2, 2002, the Chief of Police states, "[y]ou will remain on Administrative Leave until such time that I receive a final report on your fitness for duty exam. You will be notified by my office once you have been cleared for duty."

[¶ 15] We conclude, in Nagel's suspension notice, the Chief of Police made it a condition for reinstatement that Nagel not only complete a fitness-for-duty examination, but be found fit for duty. She informs Nagel that failure to follow though with the order can result in termination. Therefore, his ultimate termination was not a second punishment for the same conduct, but a result of his failure to comply with the original discipline order. When Dr. Campion found Nagel unfit for duty and concluded that counseling was not recommended for continued employment, Nagel failed to successfully complete the original discipline order. At that point, the Chief of Police had cause to terminate Nagel based on ordinance 9–06–02(3), Dr. Campion's reports, and Nagel's past discipline problems.

[¶ 16] Nagel relies heavily on authority from other jurisdictions to support his argument the city may not terminate a city employee for conduct for which he has already been suspended. *Siler v. City of Harrisburg,* 54 Pa.Cmwlth. 303, 422 A.2d 704 (1980); *In Re Ditko's Appeal,* 385 Pa. 435, 123 A.2d 718 (1956); *Messina v. City of Chicago,* 145 Ill.App.3d 549, 99 Ill.Dec. 493, 495 N.E.2d 1228 (1986); *Rochon v. Rodriguez,* 293 Ill.App.3d 952, 228 Ill.Dec. 416, 689 N.E.2d 288 (1997); *James v. Sewerage and Water Board of New Orleans,* 505 So.2d 119 (La.Ct.App.1987); *State Department of Transportation v. State Career Service Commission,* 366 So.2d 473 (Fla.Dist.Ct.App.1979); and *Ladnier v. City of Biloxi,* 749 So.2d 139 (Miss.Ct.App. 1999). However, the facts of those cases are distinguishable from the instant case. Those city employees were not required to successfully complete a fitness-for-duty examination as part of their original discipline, and the matter was closed with the suspension. Further, the city employees were given no indication that further discipline may follow their suspensions for failure to comply with the discipline order.

Here, Nagel was informed that further discipline may follow his suspension if he did not successfully complete a fitness-for-duty examination. Accordingly, the cases cited by Nagel are not applicable to the facts of this case.

B

[¶ 17]   Nagel argues the police department had to satisfy Bismarck Municipal Ordinance 9–06–05 before terminating him because Dr. Campion's report concluded he was unfit to be a police officer to a reasonable degree of psychological certainty.   He argues that this determination triggers the provisions of Bismarck Municipal Ordinance 9–06–05.

[¶ 18]   We conclude Bismarck Municipal Ordinance 9–06–05 does not apply to Nagel's termination.   Chapter 9–06 of the Bismarck Municipal Ordinances, "Employee Separation and Discipline," governs city employee termination.   Bismarck Municipal Ordinance 9–06–05 states:

> Compulsory Retirement.  An appointing authority may dismiss or involuntarily retire a full-time employee who is physically or mentally unable to perform the duties of the employee's position. The appointing authority *may* direct any employee to submit to an examination of the city health officer and two other physicians named by the personnel director for the purpose of determining if the employee is physically or mentally unable to perform the duties of the employee's position.   Refusal to be examined shall be deemed grounds for suspension, demotion or dismissal.  Upon the concurring report of at least two physicians that the employee is physically or mentally unable to perform his or her duties, the employee may [be] dismissed or involuntarily retired.   The employee may appeal the action pursuant to section 9–06–04.

Bismarck Municipal Ordinance 9–06–05 (emphasis added).

[¶ 19]   The title of this ordinance is "Compulsory Retirement" and states that "[a]n appointing authority may dismiss or involuntarily retire. . . ." This ordinance is permissive and applies to city employees who become physically or mentally unfit to perform job duties due to an actual physical or mental disability rather than a person who has been found unfit for the job due to personality traits such as Nagel's. Dr. Campion's report does not mention a mental disability, but general personality traits, i.e., disrespectful to authority, uncooperative, not fitting for a law enforcement officer.   The Chief of Police's termination of Nagel was a matter of discipline, not an involuntary retirement or termination for a mental or physical disability.

[¶ 20]   In her letter informing Nagel of his termination, the Chief of Police relied on Bismarck Municipal Ordinance 9–06–02(3), Dr. Campion's report, and Nagel's past discipline problems.   Bismarck Municipal Ordinance 9–06–02(3) provides that "[a]n employee may be subject to disciplinary action for conduct impairing their performance or that of the city government, including, but not limited to: . . . [i]nability to get along with fellow employees or the citizenry resulting in interference with the performance of duties of any employee." Dr. Campion's report states:

> His peer and supervisor responses to the NPASS suggest remarkable concerns with regards to his personality traits as an officer, as well as his ability to function as a team player.  His responses as noted from his taped interviews suggest an individual who is argumentative, accusatory, disrespectful of department authority, and uncooperative.   There appears to be an arrogant disrespectfulness in his verbal behavior and tone on the tapes.  His test results

suggest work difficulties, lack of social sensitivity, antisocial attitudes, behavioral patterns regarding integrity concerns, lack of work ethic, and problems with inconsiderate behavior. Officer Nagel's response to the assessment process of the fitness for duty was consistent with other clinical data, which indicated obstructional behavior and a sense that he is "above the system."

Dr. Campion's report supports Nagel's termination under Bismarck Municipal Ordinance 9–06–02(3). Dr. Campion concluded Nagel was uncooperative, was disrespectful of department authority, lacked social sensitivity, and had antisocial attitudes. These statements support the police department's conclusion that Nagel had an "[i]nability to get along with fellow employees or the citizenry resulting in interference with the performance of duties of any employee."

[¶ 21] Nagel admits the police department could have terminated him for his conduct instead of placing him on suspension. However, the Chief of Police gave Nagel a chance to become fit for duty by allowing him to successfully complete a fitness-for-duty examination or become fit for duty through treatment or therapy recommended by Dr. Campion. Further, in her letter to Nagel, dated May 2, 2002, the Chief of Police states, "[y]ou will remain on Administrative Leave until such time that I receive a final report on your fitness for duty exam. You will be notified by my office once you have been cleared for duty." Nagel had to be found fit for duty to return to his position. .

[¶ 22] Nagel has the burden to establish a clear legal right to a writ of mandamus. *Krabseth*, 1997 ND 224, ¶ 6, 571 N.W.2d 146. He requests reinstatement and a second doctor's opinion that he was mentally unfit for duty to satisfy Bismarck Municipal Ordinance 9–06–05. Nagel has not satisfied his burden to show he has a clear legal right to have Bismarck Municipal Ordinance 9–06–05 applied in his case rather than Bismarck Municipal Ordinance 9–06–02(3), and he is not entitled to a petition for a writ of mandamus.

## IV

[¶ 23] We conclude Nagel's remaining arguments are without merit. We hold the trial court did not abuse its discretion when it denied Nagel's petition for a writ of mandamus, and we affirm the trial court's judgment dismissing the petition.

[¶ 24] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM, and WILLIAM A. NEUMANN, JJ., concur.