People of the State of Illinois ex rel. Edward J. Ryan, Plaintiff-Appellee, v. Civil Service Commission of the City of Chicago, and Orlando W. Wilson, Superintendent of Police of the City of Chicago, Defendants-Appellants.

Gen. No. 52,733.

First District, Third Division.

November 20, 1969.

Raymond F. Simon, Corporation Counsel of City of Chicago (Marvin E. Aspen and Joseph N. Lascaro, Assistant Corporation Counsel, of counsel), for appellants.

Michael F. Ryan, of Chicago, for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

This is an appeal from a writ of mandamus ordering the Chicago Civil Service Commission to certify, and the Superintendent of Police of the City of Chicago to appoint Edward Ryan to the position of patrolman in the Chicago Police Department.

On May 2, 1966, Ryan was certified as patrolman after passing the requisite civil service requirements. He was not appointed, however, and in June 1966 he was called before the commission to show cause why his certification should not be disapproved. At the hearing a report was read from the police department rejecting him as being physically unfit and requesting that he be removed from the list of persons eligible for patrolmen. The report disclosed that Ryan was classified by the United States Selective Service System as being available only in time of national emergency because he did not meet the armed services' physical standards; the report also stated that he had been examined by the Chief Surgeon of the Police Department and rejected because of bone chips in both knees. Ryan testified that he previously had a disability in his knees but that

it had been corrected; he produced a letter from a doctor supporting his testimony. The commission informed him that before he could be considered for the patrolman's position he would have to be reclassified by the Selective Service as physically fit for military service.

Ryan's draft classification was changed and he subsequently received a letter from the commission saying that his certification had been approved.

Soon after this, Ryan was informed by the police department that he would not be appointed and that another request would be made to the commission for disapproval of his certification. At the suggestion of the chief surgeon of the department he was examined by other physicians. He was again notified to appear before the commission to show cause why his certification should not be disapproved and at this second hearing, which was held in October 1966, the commission read a letter from the police department stating that Ryan had been examined by two physicians who reported that he had a defect in his knees. One of the physicians was of the opinion that the condition might ultimately require surgery. Ryan produced another letter by the same doctor who had previously supported his position which said that he was physically fit, and that there was no reasonable indication that surgery would be needed.

In November Ryan was notified that the commission had entered an order disapproving his certification. He thereupon filed a two-count complaint seeking, in the alternative, a reversal under the Administrative Review Act (Ill Rev Stats 1965, c 110, par 264 et seq.) or the issuance of a writ of mandamus. The defendants moved to strike the administrative review count on the ground that Ryan had failed to file his complaint within the time provided in the Act, and moved to strike the mandamus count on the ground that his only available remedy was by way of administrative review. The trial court denied the first motion but granted the second. Later,

the court reversed itself, reinstated the mandamus count and ordered that a writ issue directing the Civil Service Commission and the Superintendent of Police to take all necessary steps to appoint Ryan to duty as a patrolman.

 Ryan was foreclosed from prosecuting his administrative review action because he did not file his complaint within 35 days of the commission's final decision as the Administrative Review Act provides; furthermore, his complaint in mandamus and the court's writ were inappropriately directed against the commission. The commission operates under the Administrative Review Act (Ill Rev Stats 1965, c 24, § 10–1–45) and it is the exclusive means of reviewing the commission's decisions. Section 2 of the Act (Ill Rev Stats 1965, c 110, par 265) states:

> "In all such cases, any other statutory equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed. . . ."

Ryan counters this statute with the Mandamus Act (Ill Rev Stats 1965, c 87) section 9 of which provides:

> "The proceedings for a writ of mandamus shall not be dismissed nor the writ denied because the petitioner may have another specific legal remedy, where such writ will afford a proper and sufficient remedy. . . ."

This provision is not applicable to administrative decisions. The Administrative Review Act was designed to provide a single uniform method by which the administrative decisions of State governmental agencies could be judicially reviewed. People ex rel. Chicago & N. W. Ry. Co. v. Hulman, 31 Ill2d 166, 201 NE2d 103 (1964); Moline Tool Co. v. Department of Revenue, 410 Ill 35, 101 NE2d 71 (1951). It expressly prohibits the

use of pre-existing modes of review, such as mandamus, and has been consistently so interpreted. People ex rel. United Motor Coach Co. v. Carpentier, 17 Ill2d 303, 161 NE2d 97 (1959); People ex rel. Dever v. Wilson, 107 Ill App2d 223, 246 NE2d 863 (1969); People ex rel. Fike v. Slaughter, 31 Ill App2d 175, 175 NE2d 585 (1961).

 Ryan further argues that the Civil Service Commission lacked authority to conduct a second examination as to his physical qualifications and that mandamus was, therefore, the correct method to question the commission's jurisdiction. He cites the following provision of section 10–1–8, chapter 24, Ill Rev Stats (1965):

> "In the event that any applicant for an office or place in the civil service (who has been found eligible for appointment . . .) has not been appointed to such office or place within 60 days from the date of his examination as to physical qualifications and health, the commission shall cause a second examination to be made of such applicant prior to his appointment and within 60 days of such appointment, which second examination shall be practical in character and shall relate to the cardiac, pulmonary, arterial, renal and sane condition of the applicant."

The contentions in support of this argument are that his second examination was not held within the sixty-day period provided in the statute and was not restricted to his "cardiac, pulmonary, arterial, renal and sane condition." Both contentions are without merit. The statute applies only to examinations conducted by the Civil Service Commission; Ryan's examination was by the police department.

 While the decision of the Civil Service Commission was covered by the Administrative Review Act, the refusal of the police superintendent to appoint Ryan, despite the fact that he was certified, was not a de-

cision covered by the Act. Mandamus is a proper remedy to compel a public official to perform a nondiscretionary, ministerial duty if the relator has a clear legal right to have that duty performed and it appears that the official has arbitrarily and without authority refused to perform it. Ryan argues that it was the mandatory duty of the superintendent to appoint him after his initial certification, and that the superintendent had no authority to order him to undergo a physical examination before making the appointment. In support of his position Ryan relies upon Ill Rev Stats 1965, c 24, § 10–1–14, which provides:

> "The head of the department or office in which a position . . . is to be filled shall notify the commission of that fact, and the commission shall certify to the appointing officer the name and address of the candidate standing highest upon the register for the class or grade to which the position belongs. . . . The appointing officer shall notify the commission of each position to be filled, separately, and shall fill such place by the appointment of the person certified to him by the commission therefor."

This statute does not preclude the superintendent from delaying the appointment of a candidate pending the outcome of a rehearing as to the candidate's qualifications. An appointing officer has some discretion in appointing persons certified to open positions. See the discussion in Thornton v. Ramsey, 24 Ill App2d 452, 165 NE2d 65 (1959). Further, certifying agencies have the power to correct mistakes in certification. People ex rel. Gaynor v. Board of Fire and Police Com'rs, 14 Ill App2d 329, 144 NE2d 763 (1957).

The police department, having the responsibility of protecting the lives and property of the citizens of Chicago, has an obvious interest in applicants for

employment. The duties of a patrolman are varied, sometimes strenuous, and require physical well-being. The department learned that Ryan had been declared unfit for military service; he was examined by its chief surgeon, who diagnosed him as physically unfit for the position of patrolman. In view of these facts the superintendent was justified in requesting the commission to reconsider its decision. He informed the commission of the medical finding as well as of Ryan's draft classification and requested that his certification be disapproved. When his draft classification was changed and the commission reapproved his certification, the police department had two outside doctors examine him; as a result of these examinations the superintendent informed the commission that he did not meet the department's physical requirements and again requested disapproval of his certification. These actions did not prevent Ryan from asserting his rights or presenting his own evidence before the commission. They were precautionary and discretionary actions which were within the power of the department and its superintendent.

Nor is Ryan's argument that the department was without authority to examine him prior to appointment tenable. He asserts that the only course open to the superintendent was to make the appointment and then take whatever action appeared advisable during the period he was on probation. A police superintendent has the power to order a physical examination of policemen in the classified service (People ex rel. Wayman v. Steward, 249 Ill 311, 94 NE 511 (1911)) and of those who are on probationary status. People ex rel. Ballinger v. O'Connor, 13 Ill App2d 317, 142 NE2d 144 (1957). It would be illogical to prohibit a superintendent from ordering an examination of an applicant who has an obvious physical impairment or where the police department has reliable information

that he suffers from a disability which would make him incompetent to perform the tasks demanded by the position to which he has been certified. Between certification and appointment an applicant might suffer an amputation or become blind or deaf. Under such a circumstance it would be foolish to require that he be appointed before his fitness could be questioned and his certification reconsidered. Courts will presume that absurd consequences were not contemplated by the legislature in enacting a statute, and a construction will be adopted which it is reasonable to presume was intended. Zelkovich v. Industrial Commission, 8 Ill2d 146, 133 NE2d 300 (1956).

The examination ordered by the superintendent was logical, proper and within his authority. The order of the Circuit Court is reversed.

Reversed.

SCHWARTZ and McNAMARA, JJ., concur.