CATHERINE BRZANA, Plaintiff-Appellant, v. LEROY MARTIN, as Superintendent of Police, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—89—2650

Opinion filed March 14, 1991.

JIGANTI, P.J., dissenting.

Anne M. Burke, of Chicago (Laura Monahan-Jarvis, of counsel), for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Nina Puglia, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Catherine Brzana, a probationary police officer with the Chicago police department, was discharged in December 1988. She filed an action

against defendants, Leroy Martin, as superintendent of police, and Hubert W. Holton, as commander of the personnel division of the Chicago police department. Brzana seeks reinstatement as a probationary officer, plus damages. The trial court entered summary judgment in favor of defendants.

On appeal, Brzana contends that she was twice disciplined for the same reason, which is not permitted under Illinois law. She also contends that although the superintendent has almost unilateral discretion in terminating probationary employees, he cannot disregard the effect of Brzana's evidentiary hearing on disqualification, in which the personnel board of the City of Chicago found Brzana eligible to be a probationary police officer under department guidelines.

We reverse and remand.

BACKGROUND

On July 1, 1985, Brzana was appointed to the position of probationary police officer after she completed an application process. The process includes passing an examination and undergoing a background investigation. About three weeks into Brzana's training period, she was ordered to submit a urine specimen as part of the department's drug-screening program. According to the police department, her specimen contained "THC (Cannabinoids) metabolite carboxytc." While this is not further explained, we assume it refers to a measurable amount of the active ingredient in marijuana. In accordance with police department policy, this test result triggered a complaint registration and internal investigation into Brzana's suspected use of cannabis. Under the procedures that govern the use of drug screenings, Brzana presumably would have been entitled to what is called a "drug conference" before being terminated. Under the personnel rules of the police department, the drug conference is described as an informal hearing at which the employee may appear before a hearing officer, without counsel, and give evidence to defend herself against documentary evidence relating to her alleged use of drugs. Instead, what happened in the pending case is that Brzana was told that she could either resign or be fired. She chose to resign and did so on August 30, 1985. At the time, apparently, there was little or no evidence of Brzana's alleged use of cannabis except for the urinalysis itself.[1]

After Brzana's resignation, a detective in the police department suggested that Brzana reapply for the position of probationary police officer.

---

[1]The parties have not explained how urine samples are tested for drugs, the percentage of false positives or other factors affecting accuracy, or whether such tests are considered *prima facie* evidence of drug use in the drug conference.

She then resubmitted her application and successfully passed all phases of the application process. During the routine background check, however, it came to the superintendent's attention that she had resigned previously and that she did so during the investigation into her alleged use of cannabis. Based on this prior incident, the superintendent of police recommended to the commissioner of personnel that Brzana's name be removed from the list of qualified candidates for the position of probationary police officer.

By letter of May 15, 1986, the commissioner of personnel notified Brzana of the superintendent's decision to disqualify her from appointment to the police department. The reason given for her disqualification related to the drug test and her resignation during the investigation. According to the May 16 letter, she had until June 5 to submit a written request for an evidentiary hearing. For reasons that remain unexplained in the record or briefs, Brzana did not get that hearing until two years later, in May 1988.

Evidently, there are two types of hearings that a candidate for police officer may request, depending on the circumstances. One is the drug conference previously mentioned, during which a hearing officer reviews evidence and determines whether the candidate has in fact abused drugs and therefore should be disqualified from service. The second type of hearing is available when a candidate is disqualified as a result of her "background investigation."[2] In that hearing, the candidate may be represented by counsel. A series of letters in the record demonstrate confusion over what type of hearing Brzana was to receive and the precise statement of reasons for her disqualification.

The May 1986 letter from the personnel department to Brzana informed her that the disqualification was based on the background check. She was told that she was entitled to have counsel present. By letter dated August 26, 1987, however, the author of the May 1986 letter explained that the "original notice sent out to Ms. Brzana was in error and it should have been scheduled as a Drug Conference (Section 28 of the Administrative Hearing Procedure)." Still later, on January 4, 1988, the chairman of the personnel board sent a letter to Brzana regarding the upcoming conference to review [her] disqualification from the Chicago Police Department based on the results of [her] drug screening test." The

---

[2]The record reveals that the right to a hearing on the results of a background investigation stems from a civil rights action in the Federal court that was aimed at minimizing racial- and gender-based disqualifications. See *United States v. City of Chicago* (N.D. Ill. 1974), 385 F. Supp. 543, *injunction made permanent* (N.D Ill. 1976), 411 F. Supp. 218, 235, *aff'd in part & rev'd in part* (7th Cir. 1977), 549 F.2d 415.

author of that January 4 letter also sent a letter to Brzana's attorney, dated February 1, 1988, setting a date in March for "a hearing regarding Ms. Catherine Brzanas' recent investigation background by the Chicago Police Department."

An internal letter to the commissioner of personnel from Rudolph Nimocks, the police department's deputy superintendent of bureau of administrative services, emphasized that Brzana's hearing should be one to review her disqualification "because of unfavorable background investigation, not a hearing to review evidence of drug usage." This letter, dated January 13, 1988, further states that Brzana resigned "rather than cooperate with the [drug use] investigation and make a statement regarding the findings of the urine analysis."

In May 1988, more than two years since she had reapplied to the police department, Brzana was finally given a hearing on the facts and circumstances that surrounded her disqualification. The hearing officer took evidence on the matter and concluded that the superintendent's reasons for Brzana's disqualification from eligibility were unfounded.

As revealed in the May 1986 letter, the original reason that the superintendent gave the commissioner of personnel for finding Brzana disqualified from eligibility as a probationary employee was this: Brzana's 1985 urine specimen tested positive for cannabis and she resigned during the ensuing investigation. (That Brzana was given the option of resigning is undisputed, however.) The January 1988 letter from Deputy Superintendent Nimocks to the commissioner stresses that the background investigation hearing would not "review evidence of drug usage" and further stated that Brzana failed to cooperate with the investigation by resigning.[3] There was no competent evidence adduced at the hearing to

---

[3]The record contains an excerpt from the proceedings before the hearing officer. Nimocks' testimony on behalf of the police department revealed that apart from the issue of Brzana's alleged failure to cooperate with the investigation in 1985, her disqualification was based on "the fact that she had been found contaminated with narcotics." However, a written recommendation for her disqualification stated that it was *not* based on the finding of the urinalysis. Nimocks repeated that the reason for rejecting Brzana was her "contamination" by "narcotics" (presumably classifying marijuana as a narcotic). Nimocks went on to state that if Brzana were rehired, following the disqualification hearing, "[The police department] would reopen the CR investigation that was initiated and move to have her fired again." Asked why, if that were so, the department specifically denied using the urinalysis or "narcotics contamination" as the basis for disqualification, the witness said, "Because looking at the attributes of this case, it seemed appropriate to use that [noncooperation] as the rationale." Asked, on follow up, "A false statement?" Nimocks responded, "Not cooperating with the investigation," but was unable to give specifics.

support the charge of noncooperation, apparently, and the three-member personnel board upheld the hearing officer's findings in favor of Brzana.

The personnel board did not determine whether or not the 1985 urinalysis established that she had used marijuana, as that was not the point of the hearing. Nevertheless, the board was made well aware of the urine test and the fact that it was the basis upon which the superintendent recommended that Brzana be disqualified as a candidate for service as a police officer. The board rejected the superintendent's recommendation after considering the evidence and determined that the 1985 incident was insufficient to disqualify her. Accordingly, the board returned Brzana's name to the eligibility list. After an investigator for the police department came to her home to conduct an updated background check in early November, Brzana was told to report for training. On December 5, 1988, Brzana began her second period of probationary employment with the police department.

Ten days later, Brzana was told that at the close of the business day, December 15, 1988, she would be terminated due to her violation of the police department's Rule 2. Rule 2 states:

"Any action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department."

The factual basis for her violation of Rule 2 was, once again, the July 1985 urinalysis and Brzana's resignation during the investigation of the drug test.

In accordance with the personnel department's rules, the superintendent notified the board, in writing, of his decision to terminate Brzana as a probationary employee. The rules do not provide a probationary police officer with the right to challenge termination, as such employment is "at will." Hence, the probationary employee generally has no right to a hearing upon termination. Brzana sought relief in the circuit court, however, because she believed her 1988 termination was based upon the same 1985 incident that the personnel board had just rejected as a reason for finding her disqualified from the group of eligible candidates for service in the police department.

OPINION

The pending case presents an interesting conflict between the superintendent's "unfettered" right to order the termination of a probationary employee and the administrative due process rights of that employee who has been, in substance, "cleared" of the charge for which she was terminated. Can the superintendent base his termination of an

employee on the same reason for which he believed her to be disqualified from becoming a probationary officer, following an evidentiary hearing in which an adjudicative body finds her qualified under the department's own rules and procedures?

The parties' statements of the issues differ. Brzana contends initially that it was error for the trial court to sustain the defendants' position because she was originally forced to resign or be fired in 1985 and then was again "disciplined" for the same charge in 1988, when she was subsequently terminated. In support she cites the case of *Messina v. City of Chicago* (1986), 145 Ill. App. 3d 549, 556, 495 N.E.2d 1228, 1233, where the court stated, "Probationary employees can still be dismissed for any legal reason, so long as that reason has not been the basis of a previous disciplinary action."

This formulation of the issue, we believe, may lead to confusion or strained analysis because it focuses on whether her resignation constituted a "disciplinary action" by the department such that her ultimate termination in 1988 became an improper "double discipline" for the same conduct. The underlying notion of this argument resembles the "double jeopardy" or *res judicata* concept of not allowing a person to be subjected twice to punishment for the same conduct or be forced to relitigate settled issues. It is true that the impetus for Brzana's 1985 resignation, the 1988 disqualification hearing, and her subsequent termination have in common the effect to be given her urine test results. Nevertheless, we believe that a more straightforward formulation of the key issue centers on the nature and scope of the administrative due process rights that are provided under the personnel department's rules and police department standards.

■ Before examining those rules, we note that defendants rely heavily on the well-established principle that the superintendent of police may fire a probationary police officer for any legal reason, without giving the employee a hearing or right to challenge the discharge. (*E.g., Romanik v. Board of Fire & Police Commissioners* (1975), 61 Ill. 2d 422, 425, 338 N.E.2d 397. See *Beazley v. Wosik* (1988), 119 Ill. 2d 437, 440, 519 N.E.2d 468 (job applicant had no right to hearing on his disqualification based on psychological examination); *People ex rel. Shelton v. City of Chicago* (1973), 13 Ill. App. 3d 729, 731, 301 N.E.2d 162.) The rationale for this is the simple recognition that probation is literally a trial period during which the potential career officer is being evaluated by his superintendent. The period of probation enables the appointing officer to determine whether a permanent appointment is desirable, a question that by necessity is left to his or her sole judgment as appointing officer. (See *Schmidt v. Personnel Board* (1980), 89

Ill. App. 3d 434, 436, 411 N.E.2d 1060.) We note that in the pending case, Brzana was not terminated because of an adverse evaluation of her demeanor or work during the probationary period. Rather, it was the drug-screening results of July 1985 that led to her resignation and, in 1988, to her ultimate termination from the police department.

■ We agree that the superintendent of police must be free to weed out those probationary officers who are unsuited, in his opinion, for career service with the Chicago police department. Therefore, in the vast majority of such terminations, the employee will have no forum to challenge the decision because the police department is not required to grant review of the superintendent's discretionary terminations of probationary officers. But *cf. Foley v. Civil Service Comm'n* (1980), 89 Ill. App. 3d 871, 412 N.E.2d 612 (administrative agency's failure to follow its mandatory time periods for notifying probationary officer of discharge voids termination).

The pending case, however, calls into play more than just the superintendent's conceded discretion in the firing of probationary officers. At issue is not simply the question whether Brzana could have been terminated for her alleged use of marijuana back in 1985. No doubt, she could have been fired in 1985, *provided* that she was given the right to participate in a drug conference proceeding and was found to have ingested marijuana. Based on that evidentiary finding, she presumably would have been terminated or found disqualified and that would have been the end of the matter, because her firing would have been for a legal and valid reason.

What happened instead was that Brzana resigned, as she was permitted to do, and then reapplied, as was suggested to her by a detective in the training center. After passing the application process again and undergoing a background check, Brzana was informed that she would be disqualified from further consideration because the background check revealed her earlier resignation during the investigation into her alleged drug use. She was also informed of her entitlement to a hearing on the matter, and defendants do not dispute her right to such hearing.

Section 27(d) of the administrative hearing procedures of the personnel board of the City of Chicago provides:

"*Section 27. Drug Screening for Police Officer Candidates.*

(a) All applicants for the position of Police Officer and who have passed a written examination therefor shall submit to drug screening by urinalysis, such urinalysis to be administered under the direction of the Superintendent of Police. Subject to the provisions hereof; any person found to have used marijuana; or a

controlled substance (as defined under state or federal law) without a prescription; or misused a prescription drug; or used a prescription drug without a prescription, by reason of urinalysis shall, *upon recommendation of the Superintendent of Police, be disqualified from appointment to the position of Police Officer.* The urinalysis shall include an EMIT test of each sample and in the case of positive results, a confirming GCMS of each specimen. The manner of testing and custody of specimens shall be under procedures approved by the Commissioner of Personnel.

(b) The Superintendent of Police shall notify the Commissioner of Personnel of his or her recommendation for disqualification in writing, and *shall enclose with such recommendation any laboratory reports or other documentation concerning the applicant's specimen.* Upon receipt by the Commissioner of Personnel of a request for disqualification from the Superintendent Of Police based upon the results of urinalysis, the Commissioner of Personnel shall cause a notice to be sent to the applicant by certified mail \*\*\* stating that the Superintendent has requested the applicant's disqualification, the applicant's name shall be stricken from the eligible list for the position of Police officer and that *the applicant may request a review of said disqualification in the manner provided for in part (d) below.* A copy of the laboratory reports or other documentation forwarded to the Commissioner of Personnel by the Superintendent of Police shall be included with the notice.

(c) *If the Superintendent requests disqualification on additional grounds not related to the urinalysis results, the Superintendent shall include a separate statement to that effect and shall enclose any documentation in support of said additional grounds.* If the Superintendent of Police desires disqualification on grounds in addition to the urinalysis results, the Commissioner of Personnel shall so state in the notice and shall further state that said *additional grounds will be considered for disqualification only if the applicant appeals disqualification on the basis of the urinalysis results and such appeal is successful.*

(d) An applicant whose disqualification is requested on the basis of urinalysis results may request a conference with a hearing officer designated by the Personnel Board by delivering a written request therefor to the Commissioner of Personnel by delivering a written request therefor to the Commissioner of Personnel within 20 days of the mailing of the notice provided in part (b). Upon receipt of a request therefor, the Commissioner of

Personnel shall notify the applicant of the time and place of said conference. At said conference, the *Hearing Officer shall consider the laboratory reports and other documentation submitted by the Police Department and the applicant may submit written documentation supporting his or her position.* The Police Department may designate an employee of the Department to attend the conference and may submit additional documentation supporting its position. The conference shall be informal, and no formal legal representation of the applicant or the Police Department shall be permitted nor shall the hearing officer be bound by or apply formal rules of evidence. *The Hearing Officer shall prepare a written report and recommendation and submit the same to the Personnel Board, together with any documentation submitted by the applicant or Police Department. The Personnel Board shall thereafter render its decision on the disqualification.*" (Emphasis added.)

■ We infer that the above, detailed provisions recognize that employment decisions based on the results of drug screenings require certain guidelines, so as not to be "self-proving." The existence of such rules and safeguards may well be due to a belief that firings based on urinalysis results alone would be open to an assortment of legal challenges, including constitutional ones. Whatever the purpose behind the establishment of the drug conference, once such procedures are established, they must be followed by the police department and its members, including the superintendent. See, *e.g., Sye v. Wood Dale Fire Protection District No. 1* (1976), 43 Ill. App. 3d 48, 50-51, 356 N.E.2d 938; *Farmer v. McClure* (1988), 172 Ill. App. 3d 246, 255, 526 N.E.2d 486, 493, *appeal denied* (1988), 123 Ill. 2d 557, 535 N.E.2d 400 (" 'The mere fact that plaintiff was a probationary employee gave defendants no authority to act outside of their own rules' "), quoting *Messina v. City of Chicago* (1986), 145 Ill. App. 3d 549, 556, 495 N.E.2d 1228.

■ Quite clearly, the rules provide that the personnel board shall decide the issue when a candidate's disqualification is based on the mandatory drug-screening procedure. It is undisputed that Brzana was not, in 1985, given the benefit of this informal hearing as a prerequisite for termination and her affidavit of record states that she was not notified of this right. Instead, she was told to either resign or be fired. We imply no criticism of the department for offering her this choice. Once she resigned there was no need for the department to continue its investigation into her possible use of marijuana; the whole issue had become moot.

When Brzana reapplied, however, and the superintendent decided to use the urinalysis as a reason for recommending her disqualification, there would seem to be no barrier to reactivating the drug-use investigation and conducting the drug conference hearing at that time. Brzana reapplied within a month or so of the initial resignation. The background check revealed her earlier resignation and its reason. The police department could have proceeded then with the drug conference. If Brzana were found to have used marijuana, the superintendent could have terminated her with impunity (assuming she was unsuccessful in her appeal of the finding, such right of review implicit in the above-quoted rules regarding the drug screening).

In fact, as the letters of record indicate, the commissioner of personnel believed that since Brzana's disqualification was based on the 1985 drug screening, her upcoming hearing would be scheduled as a drug conference. It was not until the passage of almost two years that Deputy Superintendent Nimocks admonished the commissioner of personnel, in his January 1988 letter, that what Brzana was to receive was not a drug conference but a "background disqualification hearing."[4]

Nimocks' January 1988 letter to the commissioner of personnel also emphasized Brzana's "lack of cooperation" with the police department investigation into her alleged use of marijuana back in 1985. Apparently equating her resignation with lack of cooperation, Nimocks informed the commissioner that the upcoming hearing would not be one "to review evidence of drug use."

The parties do not explain the distinction between the two types of hearings, or whether the distinction is significant in the pending case. Defendants do suggest that because the 1988 hearing did not adjudicate Brzana's *actual* use of drugs in 1985, the police department was free to use the drug-use *allegation* as grounds for her termination following her appointment as a probationary employee.

We believe that such reasoning elevates form to such degree as to virtually gut the drug-screening safeguards. On the record before us it cannot be denied that Brzana was terminated solely because of the

---

[4]The factors for disqualification, which are listed in the police department's "background investigation standards," include any conviction for "forcible felonies," convictions of drug or marijuana use, sex offenses, weapons charges, and virtually any "criminal acts" including ordinance violations. Persons who have disobeyed court orders or who have been discharged from previous employment for certain grounds are to be disqualified, as are those with dishonorable discharges from the military and those who are not actual residents of Chicago.

drug screen. Further, it is undeniable that the drug-screening procedures were not followed in this case. Brzana's original notice of disqualification, in May 1986, cited the 1985 urinalysis and her resignation as the sole basis for her disqualification. All of the police department's stated reasons, including "lack of cooperation," were in issue at the evidentiary hearing. That was the purpose of the hearing, to see if the superintendent's reliance on the urine test results and Brzana's subsequent resignation or lack of cooperation disqualified her as a candidate for service in the police department. By its rejection of the superintendent's reasons for finding Brzana "disqualified," the administrative body charged with adjudicating disputed issues of fact concluded that Brzana was not disqualified from becoming a probationary police officer, *notwithstanding the 1985 urinalysis results and her subsequent resignation.*

The question that remains is what impact this eligibility determination of the personnel board should have on the superintendent's right to fire Brzana as a probationary officer a few days after she was told to report for training. Although the trial court viewed the issue differently, we believe it is wrong for the courts to countenance a total disregard of an administrative *adjudication* under the guise of deferring to the superintendent's right to discharge probationary employees "at will." Whether the superintendent may ever override the personnel board's factual decision in other contexts is not before this court. See *People ex rel. Ryan v. Civil Service Comm'n* (1969), 117 Ill. App. 2d 50, 253 N.E.2d 913 (superintendent of police properly asked Civil Service Commission to reconsider its certification of plaintiff as a patrolman on issue of physical condition and the court noted that an appointing officer has some discretion in appointing persons certified to open positions); *cf. Davern v. Civil Service Comm'n* (1970), 47 Ill. 2d 469, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229 (disqualified candidate for police officer unsuccessfully challenged *commission's* finding of disqualification; the supreme court held that the commission's findings on disqualification were not against the manifest weight of the evidence).

Our narrow concern here is twofold. First, we wish to ensure that the drug-screening procedures are not circumvented when a candidate is given a full hearing on drug-related grounds for disqualification, wins, becomes a *probationary police officer*, and is then discharged on the basis of the very drug charge that triggered the disqualification hearing in the first place. Second, we wish to affirm the integrity of quasi-judicial, administrative decisions that emerge from evidentiary

hearings. Allowing unilateral or collateral "reversal" of such adjudications denigrates the entire process.

With that in mind we address defendants' attempt to characterize Brzana's 1988 termination as somehow separate and unrelated to the results of the disqualification hearing. Basically, defendants maintain that because the board did not rule on the specific question of whether she had used drugs, the superintendent was free to reactivate the 1985 urinalysis results, or related reasons, as the basis for Brzana's termination in 1988. We do not agree. The 1985 urinalysis cannot become the litmus test for Brzana's fitness to become or remain a probationary employee, particularly when the board was well aware of the urinalysis and its significance in the superintendent's recommendation for striking Brzana from the list of qualified candidates. Contrary to defendants' statement that "[t]here is simply no reason to suppose that plaintiff's discharge and hearing were for the same reason," we find every reason to make that conclusion. The record bears this out.

We recognize that there is a real difference between the personnel board's role in certifying or placing *candidates'* names on eligibility lists and the supervisor's separate right to reject any probationary *employee* for any reason that is not an "illegal" one. The superintendent, not the personnel board, is responsible for ensuring that the trainee officers can handle the job down the line. This is why the superintendent is accorded nearly absolute discretion in terminating probationary officers. His observation of their job performance, coupled with long experience and sound judgment, leads, ideally, to employment decisions that will implement his criteria for an excellent police force. As a matter of policy, probationary employees are not given the right to contest their termination, even if they believe the superintendent's decision is unfair or unfounded.

In contrast to the superintendent's responsibility for the ongoing evaluation of his employees, the personnel board's concerns are largely limited to the question of initial eligibility under the applicable guidelines. If the superintendent *recommends* disqualification after a background investigation, as happened here, the board is the body charged with making the final decision following an evidentiary hearing on the grounds for such recommendation.

If the superintendent could never be bound by the substantive effect of such decisions, there would be little need for them. As noted, the right to these hearings was established in Federal court litigation arising from Chicago's allegedly discriminatory hiring procedures. (See *United States v. City of Chicago* (N.D. Ill. 1974), 385 F. Supp. 543.) If the superintendent may disregard the personnel board's decision on a

person's disqualification by firing him or her *for the same reasons* as were at issue in the disqualification hearing, the administrative procedure is a nullity.

The record and briefs before us do not set out in full the administrative rules of the personnel board or the rules of the police department. Nor have the parties analyzed the relationship between the personnel board and the police department. Our own analysis, however, reveals no solid basis upon which to assume that Brzana's background investigation hearing was meant to be advisory (or, to be accurate, illusory).[5] It is no answer to state that the superintendent has power to terminate probationary officers while the personnel board only rules on issues relating to initial eligibility. While that is true as far as it goes, in the pending case the superintendent's termination of Brzana, as a probationary employee, clearly was for the same reasons as were ruled "unfounded" in the disqualification hearing accorded to Brzana by law.

■ Defendants admit that Brzana's termination, just days after beginning her probationary period in 1988, was premised on the department's own "finding" that she had drugs in her system in July 1985. As we have concluded, mere *allegations* of drug use based on the 1985 urinalysis do not transform into findings of drug use, absent the type of procedures contemplated in the administration's own rules for dealing with drug-screening cases.

Could the superintendent have terminated Brzana in 1988 for reasons unrelated to the 1985 incident? Yes. Could he terminate her for that same 1985 incident, once the personnel board had entered a ruling in her favor? No. Any other result would reduce the evidentiary decision of the board to mere window dressing.

It is important to bear in mind that we are not advocating any substantial diminution in the superintendent's authority to discharge probationary employees who are found, after the pertinent hearing, to have smoked cannabis. Here, however, we are asked to presume not only that Brzana in fact used drugs but also that the charge of drug use alone, based on the 1985 urinalysis, is self-sustaining. As we noted, to adopt that position would be to disregard the very rules that the police department is bound to follow. See *Farmer v. McClure* (1988),

---

[5]Defendants assert that because the personnel board's decision expressly stated that it had no "precedential value," this means it was not binding on the department. We believe it means only that the decision was not binding as precedent in other administrative hearings involving disqualifications.

172 Ill. App. 3d 246, 526 N.E.2d 486; *Messina* (1986), 145 Ill. App. 3d 549, 495 N.E.2d 1228.

■ Because we find that Brzana's position is well taken and that the defendants did not follow their own rules and regulations regarding the drug conference hearing in the first place, we conclude that the trial court erred in entering summary judgment in favor of defendants. Accordingly, we reverse the judgment and remand for further proceedings. We agree that the material facts relating to Brzana's termination in 1988 are not in dispute, and we remand only for consideration of damages or other relief. Our holding is limited to nullifying Brzana's 1988 discharge based on the 1985 urinalysis, resignation, and surrounding circumstances. Any further use of the 1985 incident is thus barred as a basis of discipline or termination in the future.

In conclusion, we note that the administrative hearings provided under the rules give people in Brzana's position a limited right to contest their termination as probationary employees, at least when the termination is plainly linked to the same grounds as were rejected in the evidentiary hearing on disqualification. We do not believe our narrow holding will have an adverse or unintended affect on the superintendent's authority to deal with probationary employees in other contexts.

Reversed and remanded.

JOHNSON, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

Respectfully, I dissent. The majority found that the trial court erred because as the majority stated, "we find that Brzana's position is well taken and that the defendants did not follow their own rules and regulations regarding the drug conference hearing." (211 Ill. App. 3d at 429.) Contrary to the statement of the majority, that was not Brzana's position. Brzana never took that position in the trial court and it was not raised on appeal. Quite the opposite, on December 19, 1988, at a hearing on a motion for a temporary restraining order, the plaintiff's attorney stated that the rules provide that a probationary police officer candidate be given a drug-screening test and "she's already had one." On August 4, 1989, at the hearing on the motion for a summary judgment, counsel stated that there had been a drug conference and hearing under the rule.

Not only is the fundamental premise of the majority belied by the record, the legal conclusion that the defendants did not follow the

rules is faulty. The rule states that the party "may request a conference." Nowhere does the majority suggest that the plaintiff requested and was denied a conference. Rather, the majority implies it was the duty of the police department to suggest the conference. The majority states that after the plaintiff reapplied, there was "no barrier to *** conducting the drug conference hearing at that time." The majority then says that the police department "could have proceeded" then with the drug conference. 211 Ill. App. 3d at 425.

The issues properly before this court emanate from a complaint filed by the plaintiff which stated essentially that the plaintiff resigned from her position in 1985, reapplied and successfully completed all phases of the application procedure. However, on May 15, 1986, the commissioner of personnel informed the plaintiff that she was disqualified based on an updated background check. The reason given for the disqualification was the fact that a background check had revealed that the plaintiff had previously been appointed but that on August 6, 1985, a urine specimen she had submitted was found to contain THC (cannabinoids) metabolite carboxythc. The commissioner further informed the plaintiff that she had resigned while the investigation regarding the allegations of the THC in her urine specimen was in progress. After receiving notice of her disqualification, the plaintiff requested a hearing as she was entitled to do under section 28 of the administrative hearing procedure.

A hearing was held before a hearing officer of the personnel board of the City of Chicago. The personnel board approved the retention of the plaintiff's name on the eligibility list for police officers. In her complaint, the plaintiff alleged that the police department ignored the findings of the personnel board. The plaintiff concluded that the defendants in essence disciplined her again for conduct which allegedly occurred in 1985 and for which a full evidentiary hearing resulting in her reinstatement on the eligibility list was provided.

On appeal, the plaintiff raises two issues. Consistent with her argument in the trial court, she says that she was twice disciplined for the same alleged misconduct. Citing to the case of *Messina v. City of Chicago* (1986), 145 Ill. App. 3d 549, 495 N.E.2d 1228, the plaintiff argues that this action is improper even with respect to probationary employees. I believe it is apparent, as it was to the trial court, that the fact of the plaintiff's initial resignation was not a disciplinary action. The only disciplinary action in this case occurred when the plaintiff was terminated under the recommendation of the superintendent of police in December of 1988. As the commissioner noted when he in-

formed the plaintiff of her disqualification, she resigned before the investigation in 1985 was completed.

The plaintiff next argues that in the factual setting alleged in the complaint, the superintendent of police had no authority to terminate a probationary officer. The plaintiff makes two arguments to support the contention that the superintendent had no authority. First, she alleges that as a matter of statutory construction she was provided with a hearing before the personnel department to challenge the superintendent's recommendation and was successful in doing so. The plaintiff argues that the provisions allowing for a hearing are meaningless if the candidate can be terminated for the same reason she successfully challenged at the hearing.

As authority for her contention, the plaintiff states that it is a fundamental rule of statutory construction that where there are two constructions that may be given to a statute, one of which would make the enactment absurd or illogical while the other would render it reasonable and sensible, the construction which leads to the absurd result must be avoided. *Mulligan v. Joliet Regional Port District* (1988), 123 Ill. 2d 303, 527 N.E.2d 1264.

In my estimation the plaintiff offers scant authority for divesting the police superintendent of the ability to remove probationary police officers. There is a legitimate rationale for giving the superintendent broad authority to remove prospective police officers. It is only during the probationary phase of the officer's training process that certain characteristics which may make the prospective officer unacceptable for appointment will come to light. (See *Romanik v. Board of Fire & Police Commissioners* (1975), 61 Ill. 2d 422, 338 N.E.2d 397.) The probationary period is part of the selection process, and until the prospective officer successfully completes this period of review, he has not reached the status of an appointed police officer. Moreover, in the present case the majority conceded that the plaintiff could have been fired or disqualified as a result of her alleged use of marijuana in 1985. Further, the personnel board acknowledged that its findings "have no precedential value."

The plaintiff also argues that under the policies and customs and practices of the municipality and under the circumstances of this case, the trial court was in error in finding that the superintendent had the authority to terminate her. The plaintiff cites to *People ex rel. Ryan v. Civil Service Comm'n* (1969), 117 Ill. App. 2d 50, 253 N.E.2d 913, in arguing that the superintendent does not have unfettered discre-

tion. The plaintiff cites *People ex rel. Ryan* for the statement that "[a]n appointing officer has some discretion in appointing persons certified to open positions." (*People ex rel. Ryan*, 117 Ill. App. 2d at 57, 253 N.E.2d at 916.) That of course is not the holding in the case, and *People ex rel. Ryan* is distinguishable from the present case for numerous reasons that are not pertinent. Nevertheless, the plaintiff cites to the case to suggest that the superintendent does not have unfettered discretion. However, even the plaintiff's interpretation of *People ex rel. Ryan* does not support the proposition that the superintendent had no discretion in this case. The rationale for the superintendent's broad authority over probationary officers, as previously stated, applies to this argument as well.