755 N.E.2d 143 (2001)
324 Ill. App.3d 856
258 Ill.Dec. 62
Ruben KING, Plaintiff-Appellant,
v.
CITY OF CHICAGO, Department of Police; Richard C. Stevens, Commander Personnel Division; The Chicago Housing Authority Police Department; Donnie Hickson, Indiv. and as agent of the Chicago Housing Authority, Defendants-Appellees.
No. 1-99-4123.
Appellate Court of Illinois, First District, Fourth Division.
August 16, 2001.
Rehearing Denied August 1, 2001.
*145 Tamara L. Cummings, Joseph V. Roddy, Law Offices of Joseph V. Roddy, of Chicago, for Appellant.
Mara S. Georges, Corporation Counsel of the City of Chicago (Valerie Quinn, Special Assistant Corporation Counsel), for Appellees City of Chicago and Richard C. Stevens.
G.A. Finch, General Counsel, The Chicago Housing Authority Office of the General Counsel (Joseph T. Moriarty, Senior Staff Counsel), for Appellees The Chicago Housing Authority Police Department and Donnie Hickson.
Justice BARTH delivered the opinion of the court:
Plaintiff Ruben King appeals from the circuit court's dismissal of his two-count complaint against the City of Chicago (City), Richard C. Stevens, the Chicago Housing Authority police department (CHAPD), and Donnie Hixon[1].

BACKGROUND
The following is contained in the complaint. King was hired by CHAPD on May 16, 1996. An incident involving King and several other CHAPD officers occurred on January 1, 1998, wherein it was alleged that King was present when several CHAPD officers fired their weapons into the air and he failed to report the conduct to his superiors. A complaint was filed and an investigation conducted regarding the incident. Hixon, a member of the internal affairs division of the CHAPD, was in charge of the investigation.
On September 12, 1998, King was laid off from the CHAPD for financial and organizational reasons. As of September *146 12, 1998, King had not received any formal discipline for his involvement in the January 1, 1998, incident.
King was contacted by the Chicago police department (CPD) in October 1998, regarding his application for employment with the CPD. CPD investigator Stephen Scott's subsequent background interview with King included discussion of the CHAPD investigation. King told Scott he had not been disciplined nor had he received any formal notice of suspension or termination from the CHAPD as a result of the incident.
On November 13, 1998, King was notified by the CPD to report for training as a police recruit. The notification letter stated King had "completed the pre-hiring screening process." King became a CPD probationary officer on November 30, 1998.
Sometime after November 13, 1998, Hixon contacted Scott and Scott's supervisor at the CPD. King alleges Hixon made the following statements at that time: (1) King had been suspended from the CHAPD due to the January 1, 1998, shooting incident; (2) that "whoever had done the background check at Chicago had really fucked up"; and (3) King should not be a police officer. The CPD terminated King on December 11, 1998.
In his two-count complaint, King alleged the CHAPD and Hixon had defamed him and that the City and Stevens improperly terminated him. King sought monetary damages from the CHAPD and Hixon and either reinstatement to the police training academy or an investigation from the City and Stevens. The trial court dismissed count I (against the CHAPD and Hixon) on September 17, 1999, and count II (against the City and Stevens) on October 12, 1999, pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 1998)). King timely filed his notice of appeal from both orders.

ANALYSIS
On appeal, King contends the trial court erred in ruling that the CHAPD and Hixon were immune from liability under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 et seq. (West 2000)) and the Employment Record Disclosure Act (Disclosure Act) (745 ILCS 46/10 (West 2000)). King also contends the trial court erred when it found Hixon's statements were qualifiedly privileged. As to the City and Stevens, King contends their dismissal was erroneous because King was entitled, under a CPD general order, to an investigation prior to termination.
King alleged in count I that the CHAPD, through its agent Hixon, defamed him when Hixon told CPD investigator Stephen Scott that (1) King had been suspended by the CHAPD because of a shooting incident; (2) "whoever had done the background check at Chicago had really fucked up"; and (3) King should not be a police officer. The trial court's order dismissed count I pursuant to section 2-619 of the Code. 735 ILCS 5/2-619 (West 1998).
A motion for involuntary dismissal pursuant to section 2-619 should be granted only when there are no material facts in dispute and the moving party is entitled to dismissal as a matter of law. Rochon v. Rodriguez, 293 Ill.App.3d 952, 958, 228 Ill.Dec. 416, 689 N.E.2d 288 (1997). A section 2-619 motion admits as true the well-pleaded facts and the legal sufficiency of the complaint. MBL (USA) Corp. v. Diekman, 137 Ill.App.3d 238, 241, 91 Ill.Dec. 812, 484 N.E.2d 371 (1985). Section 2-619 allows a defendant to seek involuntary dismissal of an action because *147 it is barred by affirmative matter that defeats the claim. MBL, 137 Ill.App.3d at 241-42, 91 Ill.Dec. 812, 484 N.E.2d 371. A section 2-619 movant may provide an affidavit in support of the motion if the grounds for the dismissal do not appear on the motion's face. 735 ILCS 5/2-619 (West 1998). A section 2-619 affidavit may not present facts that challenge the allegations of the complaint. MBL, 137 Ill.App.3d at 242-43, 91 Ill.Dec. 812, 484 N.E.2d 371. A reviewing court is not bound to accept the reasons given by the trial court for its judgment and the judgment may be sustained upon any ground warranted, regardless of whether it was relied on by the trial court and regardless of whether the reason given by the trial court was correct. Material Service Corp. v. Department of Revenue, 98 Ill.2d 382, 387, 75 Ill.Dec. 219, 457 N.E.2d 9 (1983). A trial court's ruling on a motion based on section 2-619 is reviewed de novo. Epstein v. Chicago Board of Education, 178 Ill.2d 370, 383, 227 Ill.Dec. 560, 687 N.E.2d 1042 (1997).
The trial court found the CHAPD and Hixon were immune from liability for Hixon's statements under the Tort Immunity Act. 745 ILCS 10/1-101 et seq. (West 2000).
The Tort Immunity Act provides in part:
"A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-107 (West 2000).
and:
"A public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-210 (West 2000).
By failing to raise the argument in his brief on appeal, King concedes that the trial court properly granted dismissal against the CHAPD pursuant to the Tort Immunity Act. See Saldana v. Wirtz Cartage Co., 74 Ill.2d 379, 386, 24 Ill.Dec. 523, 385 N.E.2d 664 (1978) (When an appellant seeks reversal, any theories that are not pursued or advanced with citation of authorities are deemed waived). Therefore, we focus our discussion on the court's dismissal as to Hixon on the basis of the Tort Immunity Act.
King alleged in his complaint, and it stands as admitted in a section 2-619 motion, that Hixon was acting on behalf of the CHAPD and as its agent when he "negligently" made the alleged statements. The plain language of section 2-210 of the Tort Immunity Act cloaks Hixon with immunity from liability. See 745 ILCS 10/2-210 (West 2000). The trial court properly dismissed count I against Hixon.
Having determined that count I was properly dismissed pursuant to the Tort Immunity Act, we find no need to analyze the other grounds relied upon by the trial court for the dismissal. See Material Service, 98 Ill.2d at 387, 75 Ill.Dec. 219, 457 N.E.2d 9.
King next argues that the trial court erred when it dismissed count II against the City and Stevens. King contends count II alleged a justiciable issue, as defined in Rochon, 293 Ill.App.3d at 956-57, 228 Ill.Dec. 416, 689 N.E.2d 288, because the City had improperly terminated him by failing to investigate the statements made by Hixon. King sought either reinstatement as a probationary officer or an order requiring the City and Stevens to conduct an investigation.
*148 The parties agree that CPD probationary officers such as King are at-will employees. King however, argues that the CPD's power to discharge him is limited by CPD general order No. 93-3[2] (Chicago Police Department General Order No. 93-3 (eff. January 15, 1993)), which requires an investigation of the charges and substantial evidence of violations before the imposition of discipline. However, general order No. 93-3 clearly is inapplicable to this case. By its terms, it is concerned solely with the discipline of CPD members for violations of CPD rules, regulations, directives and orders. General order No. 93-3 is entitled "Complaint and Disciplinary Procedures" and sets forth the "rights, responsibilities and procedures for conducting investigations relative to disciplinary matters." Chicago Police Department General Order 93-3 (eff. January 15, 1993) (Emphasis added.) King does not contend that he was discharged because of any misconduct as a CPD probationary officer or for an alleged violation of any CPD rule or regulation. His discharge was not a disciplinary measure as defined by CPD general order No. 93-3. Hence, his reliance on general order No. 93-3 is misplaced.
King has not directed us to any other ordinance, law, contract or understanding limiting the superintendent's ability to discharge an at-will employee. He has failed, therefore, to establish that he had a legitimate expectation of continued employment with the CPD. See Faustrum v. Board of Fire & Police Commissioners, 240 Ill.App.3d 947, 949, 181 Ill.Dec. 567, 608 N.E.2d 640 (1993). Without a legitimate expectation of continued employment, King has no property interest in his position with the CPD. See Faustrum, 240 Ill.App.3d at 949, 181 Ill.Dec. 567, 608 N.E.2d 640. We note further that the very order upon which King relies specifically provides that "[n]othing in this order diminishes the authority of the Superintendent of Police to * * * separate * * * probationary employees." Chicago Police Department General Order No. 93-3, Addendum 2 (eff. January 15, 1993).
King attempts to analogize his case to those in which this court has found the probationary officers were improperly discharged. See Rochon, 293 Ill.App.3d at 957-58, 228 Ill.Dec. 416, 689 N.E.2d 288; Brzana v. Martin, 211 Ill.App.3d 415, 429, 155 Ill.Dec. 898, 570 N.E.2d 411 (1991); Messina v. City of Chicago, 145 Ill.App.3d 549, 555, 99 Ill.Dec. 493, 495 N.E.2d 1228 (1986). The cases are readily distinguishable, however, as they involved complaints of so-called "double discipline", i.e., two punishments for a single infraction, a circumstance not present here. Our concern *149 is the superintendent's discretionary authority to discharge probationary police officers.
We find the facts presented by this case similar to those in Flynn v. Hillard, 303 Ill.App.3d 119, 123, 236 Ill.Dec. 589, 707 N.E.2d 716 (1999), where we found that unlike the plaintiffs in Rochon, Flynn had not identified any legal right that was violated by the CPD's failure to follow its own rules and general orders. The Flynn court distinguished Rochon, as we do here, as standing for "the proposition that rules for meting out punishment must be consistent even for probationary employees." Flynn, 303 Ill.App.3d at 123, 236 Ill.Dec. 589, 707 N.E.2d 716.
Finally, we note that requiring the superintendent to conduct an investigation prior to the dismissal of a CPD probationary officer would eviscerate the superintendent's discretionary authority to discharge probationary officers at will. The superintendent has nearly absolute discretion in his selection of sworn police personnel and may fire probationary officers for any legal reason without a hearing. See, e.g. Rochon, 293 Ill.App.3d at 957, 228 Ill.Dec. 416, 689 N.E.2d 288; Brzana, 211 Ill.App.3d at 427, 155 Ill.Dec. 898, 570 N.E.2d 411; Messina, 145 Ill.App.3d at 556, 99 Ill.Dec. 493, 495 N.E.2d 1228.
For the reasons set forth, we affirm the orders of the trial court which dismissed both counts of King's complaint.
Affirmed.
HOFFMAN and SOUTH, JJ., concur.
NOTES
[1] Donnie Hixon was incorrectly sued as "Donnie Hickson" in the circuit court and will be referred to as "Donnie Hixon" in this opinion.
[2] The portion of general order 93-3 relied upon by King provides:

"The member assigned to investigate a complaint against a Department member will before sustaining a complaint, ensure that `just cause' exists to support the allegation. The investigator will consider the following criteria in making this determination:
a. The member must have received forewarning or have foreknowledge of possible of probable consequences of his conduct. (This is satisfied by a published rule, regulation, or other order made known to Department members.)
b. A full and fair investigation established that the member did in fact violate or disobey a rule or order of the Department.
c. The accused was afforded an opportunity to respond to the allegations.
d. The investigation uncovered substantial evidence or proof of the allegations against the accused.
e. The rules, regulations, orders and penalties have been applied without discrimination." (Emphasis in original.) Chicago Police Department General Order No. 93-3, Addendum 3 (eff. January 15, 1993).